PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER MAZZARELLO       *

     Plaintiff       *

v.       *      Civil Action No. AMD 02 CV 3576

LUCENT TECHNOLOGIES, INC.       *

     Defendant       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jennifer Mazzarello, Plaintiff, by and through her attorneys, Paul V. Bennett and James E. Zuna, Jr., hereby submits this Memorandum of Law in Opposition to Lucent Technologies, Inc., Defendant's, Motion for Summary Judgment.

## I. Summary of Claims

In this case, plaintiff alleges violations of 42 U.S.C. §2000e, et. seq., in that she was sexually harassed on the job by her supervisor, that when she complained about the harassment, her employer failed to carry out an adequate response, that the harassment continued and her subsequent complaints were either ignored and/or were the basis for illegal retaliation against her on the job, that she was discriminated against based on her gender and that, because of the hostility, discrimination, harassment and retaliation, she was ultimately forced to resign.

## II. Summary of Law

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there exist factual issues "that properly can he resolved only by finder of fact because they may reasonably be resolved in favor of either party," then

PDFMAILER.DE Print and share free. Letters delivered with attachments colored and framed by PDFMAILER.DE

summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; See also *Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co*., 181 F.2d.390, 394 (4th Cir.1950). "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).

The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56 (c); *Pulliam*, 810 F.2d, at 1286 (citing *Charbonnages de France v Smith*, 597 F.2d 406 414(4th Cir. 1979)). When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. See, *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998), *Matsushita Elec. Indust. Co. v Zenith Radio Corp*., 475 U.S.574, 587-88 (1986); *United States v. Diebold*, 369 U.S. 654, 655 (1962); *Poller v. Columbia Broadcasting Sys., Inc*., 368 U.S. 464, 473 (1962). Courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue. Summary judgment disposition remains appropriate only if the plaintiff cannot prevail as a matter of law. *Ballinger v. North Carolina Agric. Extension Serv*., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987).

In order to defeat Defendant's Motion for Summary Judgment, plaintiff must establish a *prima facie* case of discrimination or harassment and demonstrate that the employer's claimed legitimate nondiscriminatory reasons for its actions was merely a pretext to mask its unlawful discriminatory motives. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)*; Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *St. Mary's Honor Center v.*

PDFMAILER.com Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

*Hicks,* 113 S.Ct. 2742 (1993).

**III. Statement of Facts**

**A.      Plaintiff's Commencement of Employment With Lucent.**

Plaintiff incorporates by reference Section A of the Statement of Facts contained within

Lucent Technologies, Inc., Defendant's ("Lucent's") Memorandum of Points and Authorities in

Support of Its Motion for Summary Judgment.

**B.      Plaintiff's Supervision Under Chris Herr was Characterized by Repeated Offensive
         Conduct.**

In or about October of 1998, Mr. Chris Herr was promoted within Lucent to the position

of C-Level Manager, and was given supervision of several projects, including Lucent's "Y2K"

project.  Thus, Mr. Herr came to directly supervise not only the Plaintiff, but also Ms. Lisa Bryan,

Mr. Jim McIlvaine, and Mr. Larry Dorr.  (Deposition of Jennifer Mazzarello, attached hereto as

Exhibit 1, page 42, line 20 – page 43, line 3; Deposition of Lisa Bryan, attached hereto as Exhibit

2, page 33, line 4 – page 34, line 9; Deposition of Chris Herr, attached hereto as Exhibit 3, page

54, line 21 – page 55, line 19.)

Throughout Plaintiff's employment with Lucent, Plaintiff consistently received favorable

performance evaluations, and was considered to be a good employee.  (See Performance Reviews

and Evaluations, attached hereto as Exhibit 4; Deposition of Richard McFaul, attached hereto as

Exhibit 5, page 36, line 11 – page 38, line 2; Deposition of Tom Moore, attached as Exhibit 6,

page 228, lines 17-19.)  Despite Plaintiff's high level of performance, between October of 1998

and August of 1999, Mr. Herr engaged in a pattern of what Ms. Mazzarello felt was offensive and

inappropriate conduct towards her and Ms. Lisa Bryan. For example, part of Ms. Mazzarello's

3

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

job included reporting on business issues to Mr. Herr. On several occasions between October of 1998 and July of 1999, when she reported what Mr. Herr believed was good news, Mr. Herr said to Plaintiff, "Tell me more, I'm getting a woody." He repeatedly mentioned that Ms. Carol Spurrier (Lucent's Vice President of North America) made his "sphincter twitch." Mr. Herr invariably would follow up this comment with a hand gesture in which he would repeatedly open and then clench his fist. (Mazzarello depo, page 122, line 5 – page 123, line 3.) On several occasions, Mr. Herr stated to Plaintiff after meetings with female Lucent managers that the female managers had their "panties in a ruffle." (Mazzarello depo, 2/27/03, page 145, line 13 – page 146, line 9; Bryan depo, page 136, line 16 – 138, line 1.)[1] Between January and May of 1999, Mr. Herr repeatedly stated to Plaintiff that he kept an empty bottle in his desk, so that he would be able to relieve himself during lengthy conference calls. (Mazzarello depo, 2/27/03, page 124, line 6 – 19; Bryan depo, page 130, line 1 – page 132, line 12.) Subsequently, Mr. Herr walked past Plaintiff's desk waving an empty bottle. (Mazzarello depo, 2/27/03, page 127, line 7 – page 128, line 3; Bryan depo, page 133, line 4 – page 136, line 5.)

During this time frame, Mr. Herr was commuting between Connecticut and Lucent's Linthicum, Maryland office. On one occasion, while packing his bag, Mr. Herr intentionally displayed his underwear to Plaintiff. (Mazzarello depo, 2/27/03, page 128, line 4 through page 130, line 9.) In or about April of 1999, Mr. Herr yelled at Plaintiff without cause while the two were meeting with a Verizon customer representative.

Throughout the relevant period of time, Mr. Herr continually referred to Plaintiff as "Little

---

[1] Mr. Herr denies using the phrase, "panties in a ruffle." Mr. Herr did however admit to using the phrase "knickers in a knot" frequently, and on at least one occasion in reference to Ms. Sarah Brazier. (Herr depo, page 79, line 17 – page 82, line 21.

4

PDFMAILER.COM Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

Girl" and Ms. Bryan as "Big Girl." (Mazzarello depo, 2/27/03, page 118, line 11 – page 119, line 7; Bryan depo, page 116, line 5 – page 118, line 11; Herr depo, page 63, line 17 – page 64, line 21, page 67, line 3 – line 18.) In or about December of 1998, Plaintiff volunteered to be assigned to a software project, Mr. Herr responded that he would give Plaintiff "as much rope as [Plaintiff] wanted to hang [her]self." (Mazzarello depo, 2/27/03, page 96, line 21 through page 98, line 5. In or about December of 1998, Mr. Herr falsely accused Plaintiff of submitting a payment voucher for excessive travel mileage. (*Id.*, page 99, line 12 – page 101, line 1.) In or about January of 1999, Mr. Herr stated to Plaintiff and Ms. Bryan that he and a client would attend nudist camps together, and that when Mr. Herr was transferred to Maryland, the same client gave Plaintiff a "blow-up" doll as a parting gift." (Mazzarello depo, 2/27/03, page 102, line 10 – page 104, line 9.)

In or about January of 1999, Mr. Herr scheduled and conducted a "team lunch" with Mr. Jim McIlvaine and Mr. Larry Dorr, but excluded Plaintiff and Ms. Bryan.[2] On or about April 13, 1999, Plaintiff, Ms. Bryan, and Mr. Herr traveled to a hotel in New Jersey for a business trip. During the trip Mr. Herr mentioned that he had not booked a room at the hotel and asked Plaintiff and Ms. Bryan as to which of the two he would be sharing a room with. (Mazzarello depo, 2/27/03, page 111, line 19 – page 114, line 6; Bryan depo, page 109, line 2 – page 112, line 9.) On or about April 28, 1999, Plaintiff attended a mid-year review with Mr. Herr. During the course of the review, Mr. Herr advised Plaintiff that all she needed to do to get ahead was to keep her desk clean, dress as if she was planning to meet with a customer everyday, and "wear a Mona Lisa smile." (Mazzarello depo, 2/27/03, page 114, line 7 – page 118, line 10.)

---

2 Mr. Herr invited Plaintiff and Ms. Bryan to a similar meeting only after being confronted with the issue by Plaintiff.

5

On or about May 27, 1999, Plaintiff met with Mr. Herr in order to discuss her discomfort with Mr. Herr's conduct as described above.  After the lunch meeting, Mr. Herr sent an e-mail to Plaintiff acknowledging the inappropriateness of his language, and asked the Plaintiff to "keep the bar high."  (See 5/27/99 e-mail from Chris Herr to Jennifer Mazzarello, attached hereto as Exhibit 7.)  Despite Mr. Herr's acknowledgement regarding his inappropriate conduct, Mr. Herr continued to make inappropriate comments toward Plaintiff.  On or about July 9, 1999, Mr. Herr accused Plaintiff of trying to show him her legs as she crossed her legs during a business meeting.  In or about July of 1999, Plaintiff accompanied Mr. Herr on an overnight business trip. After observing Plaintiff seated at the same table as a stranger during the following morning, Mr. Herr accused Plaintiff of having sexual relations with the stranger.

As a result of Mr. Chris Herr's offensive behavior, Plaintiff sought guidance from other individuals within Lucent as to how to address her concerns.  Plaintiff sought the advice of Mr. Richard McFaul, who was employed by Lucent as a C-Level manager, and had supervised both Plaintiff and Ms. Bryan prior to their being placed under the supervision of Mr. Chris Herr. (McFaul depo, page 17, line 6 through page 18, line 10, page 48, line 8 through page 49, line 4, page 57, line 14 through page 58, line 7.)

In or about July of 1999, Plaintiff spoke with Ms. Sarah Brazier, who was at that time acting as Mr. Herr's supervisor, and Mr. Ed May, who was at that time Lucent's Human Resources Director, regarding the aforementioned conduct of Mr. Herr.  (Mazzarello depo, 2/27/03, page 157, line 3 – 158, line 14.)[3]  In or about August of 1999, after Ms. Mazzarello

_____

(Mazzarello depo. 2/27/03, page 106, line 9 – page 109, line 16; Bryan depo., page 103, line 19 – page 105, line 10.)

3 Ms. Mazzarello testified at deposition that her contact with Ms. Brazier and Mr. May occurred after Ms. Lisa Bryan

related her complaints and concerns related to Mr. Herr's conduct, she was removed from Mr. Herr's direct supervision, and was further informed by Mr. May that Mr. Herr would receive a written reprimand that would be placed in his file.  (Mazzarello depo, 2/27/03, page 159, line 14 – page 160, line 11, page 162, lines 5-14.[4]  Mr. Herr was further ordered to undergo sensitivity training.  (Herr depo, page 144, lines 7 – 14.)

**C.    Mr. Chris Herr's Conduct Towards Plaintiff Following Transfer was a Continuation of the Same Kind of Misconduct.**

Despite Plaintiff's removal from Mr. Herr's supervision, Plaintiff was still made to interact with Mr. Herr on a regular basis.  Plaintiff had to appear before Mr. Herr for her performance evaluation for 1999, despite being removed from Mr. Herr's supervision in August.  (Mazzarello depo, 2/27/03, page 160, lines 12-17.)  Despite her removal from Mr. Herr's direct supervision, Plaintiff was still required to interact with Mr. Herr during the regular course of her employment.  Specifically, after her removal from Mr. Herr's supervision in or about August of 1999, Plaintiff retained responsibilities toward Lucent's Verizon Report Card Program, which required interaction and coordination with all Report Card Coordinators, including, Mr. Herr.  (See Report Card Coordinators Meeting Minutes 10/27/99, attached hereto as Exhibit 8.)

Despite Plaintiff's removal from Mr. Herr's supervision and the alleged reprimand and order for sensitivity training, Mr. Herr continued to make comments in Lucent's Linthicum office

---

was contacted by Ms. Brazier regarding Ms. Bryan's allegations as to Mr. Herr's conduct. *Id.*  Ms. Bryan testified that she was initially contacted by Ms. Brazier as to Ms. Bryan's request of Mr. Herr that she be permitted to transfer away from his supervision.  (Bryan depo., page 138, line 2 – page 143, line 16.

4 Mr. Herr testified in deposition that he had received a verbal reprimand from Mr. Ed May, and that he was informed that a record of the incidents involving Plaintiff and Ms. Bryan would be placed in his file.  (Herr depo., page 144, line 7 – page 145, line 5.)  During the course of discovery in this matter, Defendant was asked to provide a copy of Mr. Herr's personnel file.  In response, Defendant has indicated that it has been unable to locate Mr. Herr's personnel file. Consequently, there has not as of this date been provided to Plaintiff a written reprimand for Mr. Herr's aforementioned

in reference to the fact that Plaintiff had complained about his conduct. On numerous occasions after being removed from his supervision, Plaintiff heard Mr. Herr state to other individuals, "I'm a new man. I've been to charm school," ostensibly in reference to the sensitivity training that Mr. Herr was allegedly ordered by Mr. May to take.[5] (*Id.*, page 85, line 17 – page 86, line 13.) In or about September of 1999, Mr. Ed May came into the Linthicum office. When Mr. Herr saw him, Mr. Herr stated to Mr. May and in front of other employees that "That's the man who ruined my career," ostensibly in reference to the allegations made by Plaintiff and Ms. Bryan in relation to Mr. Herr's conduct. (*Id.*, page 87, line 17 – page 88, line 10.) In or about the end of 1999 and the beginning of 2000, Plaintiff was informed by Mr. Larry Dorr, a co-worker of Plaintiff's, that Mr. Herr had stated that Plaintiff and Ms. Lisa Bryan were no longer under his supervision because they were "suing him for sexual harassment." (*Id.*, 2/27/03, page 88, line 16 – page 90, line 8.)

## D.    Plaintiff's "Mentoring" By Tom Moore was More of the Same.

Prior to July or August of 2000, Mr. Tom Moore was employed by Lucent as an Executive Assistant to Ms. Carole Spurrier, who was at that time Lucent's Vice President for North America East. (Moore depo, page 9, lines 4-19.) In or about 1999, and after Plaintiff was transferred from Mr. Herr's supervision, Plaintiff was invited by Mr. Tom Moore to enter into a mentoring relationship with him. (Mazzarello depo, 2/27/03, page 283, line 18 – page 294, line

---

conduct.

5 There is conflicting evidence as to whether Mr. Herr in fact attended sensitivity training, and when that training allegedly occurred. During his deposition, Mr. Herr testified alternatively that he attended sensitivity training in the late winter/early spring of 2000, or that he attended sensitivity training in or about October of 1999. (Herr depo, page 16, line 6 – through page 17, line 3; page 23, line 13 – page 24, line 9; page 219, line 20 – page 220, line 16.) However, Mr. Tom Moore testified during his deposition that Mr. Herr had advised Mr. Moore that he had not completed his diversity training as of July 2000, nearly one year after Plaintiff and Ms. Bryan initially complained about Mr. Herr's

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

1.)  Mr. Moore's stated purpose in mentoring Plaintiff was to fine-tune Plaintiff's job skills so that she could be promoted one to two levels within a 12-month period of time.  (*Id.*, page 281, line 16 – page 282, line 1.)  Plaintiff's mentoring relationship with Mr. Moore also served to develop an official mentoring program, which ultimately was initiated by Mr. Moore in or about late 2000.  (*Id.,* page 281, lines 16-19, page 284, lines 17-21.)   During the course of mentoring sessions with Plaintiff in or about November of 1999, Mr. Moore asked many probing questions of Plaintiff, including but not limited to whether Plaintiff loved her husband, whether Plaintiff had sought counseling as a result of her work situation with Mr. Herr, and whether Plaintiff was taking medication as a result of her work situation with Mr. Herr.  (*Id.*, page 168, line 17 – page 169, line 5.)  Mr. Moore would also raise the subject of Mr. Herr during every mentoring session that he had with Plaintiff.  (*Id.*, page 169, lines 13-19.)   During the course of these mentoring sessions, Mr. Moore would discuss the job status of other Lucent employees, despite Plaintiff's repeated insistence that such matters were none of her business and made her uncomfortable. (*Id.*, page 297, lines 3-11.)

Mr. Moore, however, did not believe the allegations that Plaintiff and Ms. Bryan made against Mr. Herr, and stated as much to Ms. Bryan.  (Affidavit of Lisa Bryan, attached hereto as Exhibit 9.)  Mr. Moore further commented to other Lucent employees that he did not believe the allegations made against Mr. Herr, stating that "boys will be boys."  (Affidavit of Tammi Shapiro, Attached hereto as Exhibit 10.)

In or about November of 1999, Plaintiff attended a mentoring session with Mr. Moore. During the course of the meeting, Plaintiff confided to Mr. Moore that she was frustrated that she

---

conduct.  (Moore depo, page 47, line 20 – 49, line 14.)

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

felt the need to dress in a drab manner at the office, as she was the only younger woman in the office, and felt the need to avoid provocative comments from Mr. Herr.  Mr. Moore advised Plaintiff to "dress more her age." (Mazzarello depo, 2/27/03, page 174, lines 1-21.)  Taking Mr. Moore's advice, Plaintiff began to dress in a less drab manner.  After Plaintiff began to alter her wardrobe, Mr. Moore made a negative comment in front of Lisa Bryan regarding Plaintiff's choice of clothing, stating, "What is Jennifer wearing?"  (*Id.*, page 202, line 18 – page 204, line 20.) This was despite Mr. Moore's knowledge that he had advised Plaintiff to alter her choice of office wardrobe.

**E.      Plaintiff's Transfer Under Pam Worley Did Not Help Either.**

In or about August of 2000, Mr. Moore was transferred to the same team as Plaintiff as a D Level Director, a position that placed him in a supervisory capacity over both Plaintiff and her immediate supervisor.  As a result of this promotion, Mr. Moore terminated the mentoring relationship with Plaintiff.  (Moore depo, page 82, line 16 – page 13.)  However, Mr. Moore continued to engage in discussions with Plaintiff regarding her job status and concerns.  (*Id.*, page 86, line 10 – page 87, line 3.)  During a discussion with Plaintiff after Mr. Moore was placed in supervision of Plaintiff, Mr. Moore stated to her his belief that Plaintiff's "sexuality" would hinder her opportunities for advancement.  (Mazzarello depo, 2/27/03, page 171, line 14 – page 172, line 4.)  Mr. Moore specifically stated that Plaintiff would have to prove that she was "more than just boobs and legs." (*Id.*, page 172, lines 12-20.) [6]

Shortly after Mr. Moore became Plaintiff's D-Level supervisor, Plaintiff and Ms. Bryan

---

6 In or about February of 2001, Mr. Moore also stated to Ms. Bryan a belief that she and Plaintiff were evaluated by their prior managers on the basis of their breasts and appearance, rather than their brains.  (Bryan depo page 240, lines 4-21.)

10

PDFMAILER.COM   Print und versende PDF-Dateien mit FREE PDF converter sponsored advertisement   Print and send PDF files with PDFMAILER.COM

were placed under the direct supervision of Ms. Pam Worley.  (Moore depo, page 122, lines 8-17.)  In or about November or December of 2000, Plaintiff entered into a new mentoring relationship with Mr. Jelani Rucker.  As part of the transition process, Plaintiff met with Mr. Rucker and Mr. Moore.  (Moore depo, page 99, lines 1 – 17.) During the course of that meeting, Mr. Moore advised Plaintiff that it should be her goal to seek a promotion to a "B Level" manager's position within twelve months and to advise Plaintiff's new supervisor of this goal. (See Career Development Plan Form – Twelve Months, attached hereto as Exhibit 11; Mazzarello depo, 2/27/03, page 222, line 12 – page 223, line 9.)  When Plaintiff met with Ms. Worley to discuss Plaintiff's goal of seeking a promotion to a B-Level manager's position, Ms. Worley advised that it took her ten years to reach her position as a C-Level manager, and that Plaintiff would not be able to reach her goal of receiving a promotion to a B-Level position as quickly as she had stated.  (Mazzarello depo, 2/27/03, page 235, line 14 – page 236, line 16.)  After Plaintiff met with Ms. Worley, her stated career goals were revised to reflect a goal to achieve a promotion to an A-5 Manager's position within nine months.  (See Career Development Plan Form – Nine Months, attached hereto as Exhibit 12.)

In or about January 16, 2001, during a discussion with Ms. Bryan, Ms. Worley stated a belief that she and Plaintiff  "had a problem" with working under Ms. Worley.  At the time of this statement, Plaintiff had been working under Ms. Worley's supervision for less than a week.  (Mazzarello depo, 2/27/03, page 239, line 11 – page 240, line 9.)  In the period of time after Plaintiff began her new position under the supervision of Ms. Worley, Mr. Moore ordered Ms. Worley to investigate Ms. Bryan and Plaintiff's job performance.  (Mazzarello depo, 2/27/03, page 218, line 19 – page 219, line 3; Bryan depo, page 235, line 10 – page 235, line 17.)

11

PDFMAILER FREE PDFs and more documents with your e-mails sponsored free at www.pdfmailer.com

**F.      Plaintiff's Role as a Mentor to Tom Moore's Secretary Led to Further Retaliation.**

In or about February of 2001, Mr. Moore requested that Plaintiff act as a mentor to Ms. Kelly Hanlon, who was at that time employed with Lucent as Mr. Moore's secretary.  (Moore depo, page 108, line 11 – page 109, line 14; Mazzarello depo, 2/27/03, page 199, lines 4-6.)[7]  In the course of this mentoring relationship, Plaintiff received information from other employees regarding Ms. Hanlon's and Mr. Moore's behavior in the office.  Specifically, Plaintiff was advised by Ms. Tammi Shapiro that she had on occasion observed Ms. Hanlon kneeling in front of Mr. Moore while Mr. Moore sat at his desk, that Ms. Shapiro had observed Ms. Hanlon sitting on Mr. Moore's armrest, that Ms. Shapiro had observed Ms. Hanlon and Mr. Moore whispering and giggling in the office; that Ms. Shapiro had observed Ms. Hanlon return from a shopping excursion with Mr. Moore, after which Ms. Hanlon commented that Mr. Moore had purchased several items for her, and that Ms. Shapiro had observed Ms. Hanlon and Mr. Moore accompanying one another to lunch on several occasions.  (Shapiro Affidavit.)

Plaintiff was further advised by Ms. Bryan that Ms. Bryan had observed Ms. Hanlon kneeling in front of Mr. Moore while he was seated at his desk; that Ms. Bryan had observed Ms. Hanlon sitting on Mr. Moore's armrest; that Ms. Bryan had observed Ms. Hanlon and Mr. Moore giggling in the office; that Ms. Bryan had been informed by Ms. Linda Zachmann, who was employed as Vice President Spurrier's Executive Assistant, that Mr. Moore had taken Ms. Hanlon with his to an executive's meeting, despite the fact that no support staff were to attend; and that Ms. Denise Panyick-Dale, a Lucent employee, had informed Ms. Bryan that she had observed Ms. Hanlon in Mr. Moore's office laughing behind closed doors and after business hours.  (Bryan

---

7 Mr. Moore, however, did not advise Ms. Worley that Plaintiff was mentoring Ms. Hanlon.  This resulted in increased

PDFMAILER.com   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

Affidavit.)  Plaintiff was further advised by a Ms. Tina Amatore, a Lucent employee, that the

behavior of Ms. Hanlon and Mr. Moore in the office had become disruptive.  (Mazzarello depo,

2/27/03, page 207, lines 16-20.)[89]

In addition to the above reports, Plaintiff was further aware of the conduct of Mr. Moore

and Ms. Hanlon due to her own observations of their conduct.  In or about late January of early

February of 2001, Plaintiff was called into Mr. Moore's office while Ms. Hanlon was also present.

During the course of their conversation, Mr. Moore asked Plaintiff if she had a motto, to which

Plaintiff replied, You can never be too rich or too thin."  Mr. Moore advised Plaintiff that Ms.

Hanlon had a motto as well, and asked Ms. Hanlon to state the motto for Plaintiff.  Ms. Hanlon

replied that her motto was "Fuck, it's fun."  (Affidavit of Jennifer Mazzarello, Attached hereto as

Exhibit 13.)  Ms. Mazzarello also observed numerous occasions of Mr. Moore and Ms. Hanlon

giggling and whispering in the office, and generally act in an intimate manner.  This conduct

caused Plaintiff to feel uncomfortable in the office.  *Id.*

Based upon these reports, Ms. Mazzarello advised Ms. Hanlon to remain on the opposite

side of Mr. Moore's desk when meeting with him, to keep a respectable distance, and to be

quieter when talking with Mr. Moore.  (*Id.*, page 207, line 7 – page 208, line 16.)  Shortly after

---

tension between Ms. Worley and Plaintiff, as Ms. Worley stated that she felt undermined in her supervision of Plaintiff.
8 Plaintiff was not the only Lucent employee to receive complaints regarding the conduct of Mr. Moore and Ms. Hanlon.
During her deposition, Ms. Laraine Scarpon, who had been employed as a Human Resources Manager for the Verizon
Customer Team, testified that she had received complaints from numerous complaints from employees within Lucent
regarding the conduct of Mr. Moore and Ms. Hanlon.  As a result of these complaints, Ms. Scarpon brought the issue to
the attention of her supervisor, Mr. Ed May.  (Deposition of Laraine Scarpon, Attached hereto as Exhibit 14, page 45,
line 8 – page 47, line 22.)
9 The disruption of the office environment caused by the conduct by Mr. Moore and Ms. Hanlon is further supported by
Ms. Erica Adams.  Like Plaintiff, Ms. Adams had been mentored by Mr. Moore, and had developed personal issues with
Mr. Moore regarding what Ms. Adams perceived to be inappropriate comments about Ms. Adams' appearance, as well
as Mr. Moore's contradictory career advice.  Ms. Adams had also observed Mr. Moore and Ms. Hanlon's conduct in the
office but, unlike Plaintiff, never reported her concerns for fear of retaliation.  (See Affidavit of Erica Adams, Attached
hereto as Exhibit 15.)

PDFMAILER.com   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

providing this guidance to Ms. Hanlon, Plaintiff was confronted by Mr. Moore. During the course of their conversation, Plaintiff advised Mr. Moore that she had received complaints regarding his conduct with Ms. Hanlon. Mr. Moore asked Plaintiff what her response had been to the allegations of an improper relationship, to which Plaintiff advised that she had stated a belief that Plaintiff did not believe that Ms. Hanlon would be romantically interested in Mr. Moore, as she already had a boyfriend. Mr. Moore responded to Plaintiff that he did not find Plaintiff to be physically attractive, and threatened to remove her from the mentoring program in which she was participating. (*Id.*, page 208, line 17 – page 209, line 21, page 211, line 15 – page 212, line 2.)

During this same period of time, Ms. Bryan confronted Mr. Moore regarding what she believed to be discriminatory and retaliatory conduct toward her on Mr. Moore's part. Specifically, Ms. Bryan spoke with Mr. Moore specifically regarding his plan to remove her from the compensation plan in which she was a participant, as well as the difficulties that she experienced in finding a position to which she could transfer, away from Mr. Moore's supervision. During the course of that meeting, Ms. Bryan stated that she believed that she was being retaliated against because she and Plaintiff had previously reported Mr. Herr for his conduct. In response to Ms. Bryan's accusations, Mr. Moore stated that he had been mentoring Mr. Herr, and that he had spoken to Mr. Herr about Ms. Bryan and Plaintiff's allegations. Mr. Moore stated that as a result of these conversations, he believed that Ms. Bryan and Plaintiff's allegations were "insignificant and trivial", and dismissed the severity of Mr. Herr's conduct by stating "boys will be boys." In response to Ms. Bryan's accusation of retaliation, Mr. Moore stated, "how does it feel to have someone ruin your career without doing anything wrong?" (Bryan Affidavit.)

14

**G.**     **Plaintiff's Attempts to Seek Help from Human Resources Were Ignored.**

Based upon the above occurrences between Plaintiff, Mr. Moore, and Ms. Worley, Plaintiff reported by telephone the above incidents to Ms. Gerry Auer of Lucent's Corporate Human Resources Department in or about February of 2001.  Ms. Auer demonstrated hostility towards plaintiff for bringing the complaint, refusing to allow Ms. Mazzarello to speak to her away from the office or on the telephone line that Ms. Mazzarello was using.  After Ms. Mazzarello was able to relate her concerns of harassment and retaliation by Mr. Moore and Ms. Worley to Ms. Auer, Ms. Auer stated that Lucent does not retaliate against employees, and further refused to accept Plaintiff's statement.  (Mazzarello depo, 2/27/03, page 165, line 9 – page 166, line 21.) Defendant Lucent took no action as a result of Ms. Mazzarello's complaints.

During this same period of time, Plaintiff spoke with other Lucent employees regarding the difficulties that she was having with Mr. Moore and Ms. Worley, and her concerns that she was being retaliated against.  Plaintiff spoke on several occasions with Mr. Jelani Rucker, a B-Level Manager within Lucent who also was acting as Plaintiff's mentor, regarding her issues with Mr. Moore.  (Deposition of Jelani Rucker, attached hereto as Exhibit 16, page 44, lines 7-12.) Plaintiff further spoke to Mr. Rucker about her concerns regarding Ms. Worley, specifically her concerns that her opportunities for advancement would be hindered due to the fact that Plaintiff was a woman. (*Id.*, page37, line 19 – page 39, line 4, page 40, lines 15-18.)  Plaintiff further related a concern to Mr. Rucker that she was being retaliated against for reporting Chris Herr for sexual harassment, and for speaking to Ms. Hanlon and Mr. Moore with regard to their alleged relationship.  (*Id.*, page 76, line 16 – page 78, line 14.)  Mr. Rucker never reported Plaintiff's concerns to anyone after Plaintiff had spoken to him. (*Id.*, page 88, line 16 – page 89, line 2.)

15

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

Plaintiff, as well as Ms. Bryan, also spoke to Mr. Richard McFaul and related their concerns regarding retaliation. Mr. McFaul attempted to speak with Pam Worley regarding Ms. Bryan and Plaintiff's concerns regarding her conduct toward them, but was told to mind his own business. (McFaul depo, page 189, line 6 – 19.) Mr. McFaul also sent a note to Mr. Moore expressing concern that his conduct could be perceived as retaliation. Mr. Moore denied retaliating against Ms. Bryan and Plaintiff, and Mr. McFaul did not speak to Mr. Moore on the subject thereafter. (*Id.*, page 198, line 7 – page 200, line 5.)

In or about March or April of 2001, Mr. Moore stated to Ms. Tammi Shapiro that Plaintiff and Ms. Bryan were "troublemakers," and that they had spread rumors about him that had offended him. (Shapiro Affidavit.) During this same period of time, Mr. Moore stated a belief that Ms. Bryan was "poison" to Lucent, and that she was "poisoning" Plaintiff. *Id.* Mr. Moore further stated to these employees that Plaintiff and the other employee in question were "trying to ruin people's names," including Mr. Moore's. During the same period of time, Mr. Moore stated in Ms. Bryan's presence, "who does Jennifer think she is asking for a skip level promotion?," in reference Plaintiff's earlier stated goal to Ms. Worley that she wished to receive a double promotion within a nine-month period, and was made despite Mr. Moore's knowledge that Mr. Moore was in fact the person who encouraged Plaintiff to seek such a promotion. (Mazzarello depo, 2/27/03, page 223, lines 16-23-1.) Mr. Moore made further negative comments regarding Plaintiff to Mr. Rucker, stating that he was "not happy" with comments that Plaintiff had made, ostensibly about Mr. Moore's alleged relationship with Ms. Kelly Hanlon. (Rucker depo, page 63, line 7 – page 64, line 8, page 64, line 19 – page 65, line 17.)

In or about the middle of March 2001, Plaintiff contacted Laraine Scarpon, Human

16

PDFMAILER.com   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

Resource Manager, to discuss the above issues within Defendant Lucent.  Ms. Scarpon stated during the course of this conversation that she was unaware that the foregoing situations existed. However, Defendant Lucent took no action as a result of this conversation.  Subsequently, in April of 2001, Mr. Herr observed Plaintiff drinking a vitamin enriched milkshake, and accused Plaintiff of being pregnant.  Such a statement was without any truth or basis whatsoever. (Mazzarello depo, 2/27/03, page 148, line 10 – page 150, line 14).  On or about May 11, 2001 Plaintiff attended a work picnic in which Mr. Moore and Mr. Herr were in attendance.  During the course of a volleyball game at the picnic, Mr. Moore suggested to Plaintiff that she tackle Mr. Herr, and later asked why she had not done so.  This was despite Mr.'s Moore's knowledge and familiarity with the history between Plaintiff and Mr. Herr.  (*Id.*, page 176, line 4 – page 177, line 12; Moore depo, page 96, line 16 – page 97, line 21.)   In or about the middle of May of 2001, Plaintiff reported the above incidents to Ms. Scarpon and again no action was taken after Plaintiff's report was made.

**H.     Plaintiff's Subsequent Attempts to Complain to Pam Worley Were Also of No Help.**

On or about June 1, 2001, Plaintiff attended a mid-year review with her immediate supervisor, Pam Worley. During the course of that meeting, Plaintiff advised Ms. Worley that her prior statement regarding her plan to receive a double promotion within nine months was made at Mr. Moore's suggestion.  Plaintiff further advised Ms. Worley of the above issues that she had with Mr. Moore, namely that Mr. Moore had scrutinized her on the basis of Plaintiff's appearance, that Mr. Moore had continued to discuss the employment status of other employees despite Plaintiff's repeated insistence that he not do so, and that Mr. Moore had caused Plaintiff to feel degraded. Plaintiff ultimately advised Ms. Worley that Plaintiff no longer wished to be alone with Mr. Moore

17

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

at meetings, based upon his previous conduct and comments regarding Plaintiff.  Plaintiff further
advised Ms. Worley that Mr. Herr was continuing to make derogatory comments toward Plaintiff.
 At the conclusion of the meeting, Ms. Worley advised Plaintiff that she should "suck it up and be
the better person."   Ms. Worley further advised that if Plaintiff was not happy within her
department, then she should transfer to another team.  (Mazzarello Affidavit.)

On or about July 24, 2001, Mr. Moore requested that Plaintiff meet with him in his office.
Plaintiff immediately contacted Ms. Worley and asked if Ms. Worley knew what the meeting was
about, and asked Ms. Worley to attend the meeting with her.  Ms. Worley replied that she did not
know what the meeting was to be about.  Plaintiff attended the meeting with Mr. Moore without
Ms. Worley being present.  (Mazzarello depo, 2/27/03, page 219, line 5 – page 220, line 7.)
During the course of the meeting, Mr. Moore asked Plaintiff if she would take a position as a
"Technical Consultant."  (Mazzarello depo, 2/27/03, page 245, lines 1-3.)  Mr. Moore had
previously stated to Plaintiff that Lucent's technical consultants would be a group hit hard by
Lucent's upcoming layoffs.  (*Id.*, page 295, line 21 – page 297, line 16.)  Historically, a transfer
from an account manager's position to a position such as a technical consultant's position served
as precursor to that employee's being laid off or terminated.   *Id.*, page 296, lines 4-17.) Plaintiff
was further aware that a round of layoffs was scheduled to occur in or about November of 2001.
*Id.*, page 252, lines 3-7.)

During her conversation with Mr. Moore, Mr. Moore falsely advised Plaintiff that if she
accepted the demotion, she would be named as an Account Executive once Plaintiff had gained
experience in the Technical Consultant position, per conversations that Mr. Moore allegedly had
with Mr. Ed Sanford, Director of Switching Sales.  (*Id.*, page 224, lines 12 – 20.)  After speaking

18

PDFMAILER.COM Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

with Mr. Sanford, Plaintiff learned that he had had no such conversation with Mr. Moore. *Id.*

On or about July 30, 2001, Plaintiff met with Ms. Worley and asked her why she did not tell Plaintiff that she was aware of the purpose for the July 24, 2001 meeting with Mr. Moore. Ms. Worley admitted that she had lied to Plaintiff at Mr. Moore's direction, and stated, "What am I supposed to do?  He's my boss." (Mazzarello depo, 2/27/03, page 220, lines 4-7.)  Ms. Worley further advised Plaintiff at that time that Plaintiff was to be relieved of her duties with Networks Equipment Building Systems by November of 2001, and was to be demoted to a Technical Consultant position. (*Id.*, page 243, line 14 – page 245, line 21, page 254, line 11 – page 255, line 11.) This was contrary to Mr. Moore's statements of July 24, 2001, in which he requested that Plaintiff consider a transfer on a voluntary basis.

On or about July 31, Plaintiff spoke with Mr. Ed Sanford regarding her scheduled transfer to the technical consultant's position.  During the course of that discussion, Plaintiff related to Mr. Sanford her ongoing issues with Mr. Moore and Ms. Worley, and her concerns of retaliation.  (*Id.*, page 271, line 10 – page 272, line 3.; Mazzarello Affidavit.) Specifically, Plaintiff asked Mr. Sanford for confirmation that she could become a Switching Sales Account Executive after served some time as a Technical Consultant per Mr. Moore's representations to Plaintiff.  Mr. Sanford advised Plaintiff he never stated that he would hire Plaintiff as an Account Executive. (Mazzarello Affidavit.)    Plaintiff also advised Mr. Sanford that she had requested of Ms. Worley that she accompany Plaintiff to with Tom Moore, due to Plaintiff's discomfort with meeting Mr. Moore alone. *Id.*  In response to Plaintiff's stated concerns, Mr. Sanford stated to Plaintiff that she "had it really good" on the Verizon Customer Team, and that she should not complain. *Id.* There was no investigation or subsequent follow-up in reference to Ms. Mazzarello's claims

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

following her conversation with Mr. Sanford.

**I.   Plaintiff Was Constructively Discharged by Lucent.**

In or about August of 2001, Ms. Bryan was contacted by Ms. Denise Panyick-Dale, who was employed as a C-Level Public Relations manager within Lucent.  (Bryan Affidavit.)  During the course of their conversation, Ms. Panyick-Dale inquired as to whether Plaintiff was actively looking for other employment.  Ms. Panyick-Dale further related to Ms. Bryan that she was concerned for Plaintiff's job security, as she had learned that Plaintiff's job was in jeopardy.  *Id.* Ms. Bryan informed Plaintiff of her conversation with Ms. Panyick-Dale.  (*Id.;* Mazzarello depo, 2/27/03, page 251, line 10 – page 252, line 7.)  Ms. Bryan was at that time employed with Signal Corporation.  (Bryan Affidavit.)  After learning of Ms. Bryan's conversation with Ms. Panyick-Dale, Plaintiff asked Ms. Bryan if there were any openings at Signal Corporation.  *Id.*  After learning that there was an opening for a position on Ms. Bryan's team, Ms. Bryan submitted Plaintiff's name for consideration.  Ms. Bryan received verbal notice that Plaintiff was to be hired for the open position.  However, before receiving written confirmation or a written offer for Plaintiff to join Signal Corporation, Plaintiff submitted a letter of resignation on or about August 23, 2001.  (Bryan Affidavit.)


**IV.  ARGUMENT**

**A.  Plaintiff's Claims Are Timely.**

A person alleging unlawful employment practices as described must timely file a charge before the Equal Employment Opportunity Commission within 300 days of after the alleged unlawful practice occurred.  42 U.S.C. §2000e-5(e)(1).  Discrete acts such as termination, failure

PDFMAILER.COM  Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

to promote, denial of transfer, or refusal to hire constitute separate unlawful employment practices which must occur within the 300-day time frame in order to be actionable. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). However, a charge alleging a hostile work environment claim will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice, and at least one act falls within the time period. *Id.*, 536 U.S. at 122.

Plaintiff initiated proceedings with the EEOC on or about May 24, 2002. As a result, Plaintiff must allege a discrete adverse action that occurred on or after July 24, 2001. Defendant asserts in its Motion for Summary Judgment that no adverse action occurred after July 24, 2001. Defendant, however, fails to recall that on or about July 24, 2001, Plaintiff met with Tom Moore, during which time Mr. Moore asked Plaintiff to consider a transfer to a technical consultant's position. On or about July 31, 2001, Plaintiff met with Ms. Pam Worley, at which time Plaintiff was informed that Plaintiff was being transferred to a technical consultant's position.

Employer conduct amounts to an adverse employment action if it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a change causing a significant change in benefits. *Nichols v. Comcast Cablevision of Maryland*, 84 F. Supp. 2d 642, 654 (D. Md. 2000)(citations omitted.) In the instant matter, and construing the facts in Plaintiff's favor, Plaintiff was designated for reassignment from an account manager's position to a technical consultant's position.

A technical consultant at the time was primarily responsible for technical support as part of customer inquiries as to product information, as well as for customer inquiries regarding price quote information for specific products. (See Lucent North America Job Descriptions, Attached

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

hereto as Exhibit 17.)  The technical consultant also participated in the support of cross- product

line proposals, and organized and led the Technical, Services, and Pricing component of sales

proposals.  *Id.*

Admittedly, Plaintiff did not have an engineering or telecommunications background, or in

fact any technical background at all. (Mazzarello depo., 2/27/03, page 35, line 15 – page 36, line

3.) This is in contrast to those individuals who did occupy the technical consultant's position at

the time, who either had college degrees in technical fields, or had more extensive technical

experience than Plaintiff.  (Mazzarello Affidavit.)  The typical background of a Lucent technical

consultant is represented in Mr. T.R. Maximiliano Duarte, who was employed with Lucent as a

Technical Consultant from 1999 through 2002.  Mr. Duarte has a Bachelor of Science Degree in

Mechanical and Aerospace Engineering from Rutger's University, experience in the repair and,

improvement and testing of gamma ray detectors, experience in the research of ceramic materials,

and extensive knowledge and experience using computers, including experience using Fortran,

Pascal, Basic, and Virtual Basic computer languages, among others.  (See Resume of T.R.

Maximiliano Duarte, Attached hereto as Exhibit 18.) By contrast, Plaintiff has a Bachelor of

Science Degree in Business Administration and no knowledge or experience of Fortran, Pascal,

Basic, or Virtual Basic computer languages.  (Mazzarello Affidavit.)

The technical consultant's group had been one that Mr. Moore had previously stated

would be hard hit by Lucent's impending layoffs.  Moreover, Plaintiff's forced transfer came at a

time in which members of Lucent's management team had advised that Plaintiff was in jeopardy of

being laid off or otherwise terminated.  As such, the transfer to a technical consultant's position

constitutes an adverse employment action, and a discrete action that occurred within 300 days of

22

PDFMAILER.com   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

Plaintiff's filing with the EEOC.

Defendant further asserts that Plaintiff's remaining allegations must fall because they occurred more than 300 days prior to Plaintiff's initial filing.   Plaintiff, however, does not complain of separate discrete acts, but rather a pattern of discriminatory and retaliatory acts.  Such allegations are not time barred so long as all acts which constitute the claim are part of the same unlawful employment practice, and at least one act falls within the time period.  *National Railroad,* supra, at 122.  As the stated transfer of Plaintiff occurred within the statutory period, Plaintiff's remaining allegations are not time barred, insofar as the stated transfer constitutes one instance in the line of discriminatory and retaliatory acts that occurred.

**B.  Plaintiff's Sexual Harassment Allegations are Actionable.**

To establish a *prima facie* case of hostile work environment based upon sex, an employee must show 1) that there was unwelcome harassment; 2) the harassment was based upon sex; 3) the harassment was sufficiently pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) there is some basis for imposing liability.  *Orenge v. Veneman,* 218 F.Supp. 2d. 758, 766 (D. Md. 2002) citing *Spriggs v. Diamond Auto Glass*, 242 F. 3d 179, 183-84 (4th Cir. 2001.)  See also *Matvia v. Bald Head Island Management, Inc.*, 259 F.3d 261, 266 (4th Cir. 2001.  The Plaintiff must not only show she subjectively felt the environment to be hostile, but also that it would have been objectively hostile to a reasonable person.  *Id.*, citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993.)

Defendant asserts that Plaintiff is barred from asserting claims of sexual harassment as they relate to incidents involving Mr. Herr, on the basis that Defendant's alleged corrective action provides a defense of the claim under the principles established by the Supreme Court in *Faragher*

23

PDFMAILER.COM  Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

*v. City of Boca Raton*, 524 U.S. 775 (1998).  The Court stated in that case:

> "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.  The defense comprises two necessary elements: a) that the employer exercised reasonable care to prevent and correct promptly any corrective behavior, and b) that the plaintiff failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Id.* at 807 (citations omitted.)

No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.  *Id.* 524 U.S. at 808.

In the instant matter, Defendant concedes that, if true, the comments and actions of Mr. Herr prior to Plaintiff removal from his supervision constituted inappropriate conduct.  It is also undisputed that during the period of time between October of 1998 and August of 1999, Mr. Herr was Plaintiff's immediate supervisor, a position that would impute vicarious liability upon Defendant under the as a result of Mr. Herr's actions.  *Faragher*, 824 U.S. at 807-808.  However, Defendant asserts that it took reasonable care to correct and prevent further harassment from Mr. Herr by transferring Plaintiff away from his supervision, by verbally reprimanding Mr. Herr, and by ordering Mr. Herr to attend sensitivity training.  However, it is undisputed that Plaintiff was nevertheless thereafter required to continue interaction with Mr. Herr on business matters (e.g. Lucent's Verizon Report Card project).  Plaintiff was required to meet with Mr. Herr for her year-end review in 1999, despite being transferred away from Mr. Herr's supervision in August of 1999 after alleging incidents of sexual harassment.

Aside from Mr. Herr's self-serving statements that he was reprimanded by Mr. Ed May,

24

the only evidence of a reprimand issued to Mr. Herr is a "Memorandum for File" dated February 5, 2003 and produced by Defendant in response to Plaintiff's discovery requests, which purports to be an accounting of an EEO response to the allegations made against Mr. Herr by Plaintiff and Ms. Bryan. (See "Memorandum for File", attached hereto as Exhibit 19). That document, however, is not attributed to any individual. Plaintiff testified in deposition that she was advised that a written reprimand would be placed in Mr. Herr's personnel file. (Mazzarello depo, 2/27/03, page 162, lines 10-14.) Defendant has failed at this date to provide a copy of a written reprimand, nor has any official record of a reprimand been produced in support of the contention that Mr. Herr received a reprimand. It is therefore doubtful that Mr. Herr was ever subjected to any discipline at all.

There also remains a dispute of fact as to whether Mr. Herr's alleged sensitivity training was completed, or whether it was completed in a timely manner. During his deposition, Mr. Herr testified alternatively that he attended sensitivity training in the late winter/early spring of 2000, or that he attended sensitivity training in or about October of 1999. (Herr depo, page 16, line 6 – through page 17, line 3; page 23, line 13 – page 24, line 9; page 219, line 20 – page 220, line 16.) However, Mr. Tom Moore testified during his deposition that Mr. Herr had advised Mr. Moore that he had not completed his diversity training as of July 2000, nearly one year after Plaintiff and Ms. Bryan initially complained about Mr. Herr's conduct. (Moore depo, page 47, line 20 – 49, line 14.) It is apparent that Mr. Herr did not complete his required sensitivity training until at least July of 2000, if at all. The facts further demonstrate that Mr. Herr continued to make comments of an offensive nature toward Plaintiff, even after Plaintiff alleged incidents of sexual harassment against him.

PDFMAILER.DE   Free: Produce and send with ads    PDF Sponsored with ads by pdfmailer.de

Defendant has failed to establish by a preponderance of evidence that it took reasonable care to correct or prevent further harassment by Mr. Herr.  Where an employer neglects to enforce its anti-discrimination policy, a jury may reasonably conclude that the employer has failed to take reasonable care to prevent the discrimination.  See *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 188 (4th Cir. 2001); *Williams v. Cerberonics*, 871 F.2d 452 (4th Cir. 1989.)

### C. Defendant's Complaint Procedure, Which Was Utilized by Plaintiff, Was Ineffective.

Defendant further fails to establish that Plaintiff failed to take advantage of preventive or corrective policies within Lucent.  It is undisputed that Plaintiff reported the initial incidents of Mr. Herr's harassment to Ms. Sarah Brazier and Mr. Ed May.  Mr. Moore acknowledged during his deposition that Plaintiff spoke to him in or about the spring or summer of 2001.  (Moore depo, page 50, line 6 – page 51, line 8.)  Plaintiff's efforts to bring to the attention of management the activities of Mr. Herr were of little to no avail, and her subsequent supervisor, Tom Moore, also participated in harassment, complaints about which by Plaintiff were ignored.

As alleged by Plaintiff, during the time that Mr. Moore acted as Plaintiff's D-Level supervisor, Mr. Moore stated to her that her "sexuality" would impede her ability to advance within Lucent.  Mr. Moore further stated that Plaintiff would have to prove that she was "more than just boobs and legs."   Mr. Moore advised Plaintiff to dress in a less drab manner in the office, only to ask, "what is [Plaintiff] wearing?" after Plaintiff followed Mr. Moore's advice.

Mr. Moore engaged in a pattern of conduct in the office with Kelly Hanlon that was uncomfortable to Plaintiff, as well as to other Lucent employees.  On numerous occasions, Mr. Moore was observed sitting at his desk with Ms. Hanlon sitting on his armrest, or alternatively

26

with Ms. Hanlon kneeling in front of him.  Mr. Moore and Ms. Hanlon were observed on

numerous occasions laughing and giggling in Mr. Moore's office, and were observed in his office

behind locked doors and after business hours.

Plaintiff advised Mr. Moore that she was uncomfortable with his conduct toward Ms.

Kelly Hanlon, after Mr. Moore had confronted her about Plaintiff's mentoring advice to Ms.

Hanlon on the subject.  During the course of that discussion, Mr. Moore stated that he did not

find Plaintiff to be physically attractive.

Mr. Moore's conduct as described above had the effect of altering the terms and

conditions of Plaintiff's employment.  Mr. Moore's conduct with Ms. Hanlon had the effect of

causing severe discomfort to Plaintiff, as well as to other Lucent employees. Mr. Moore's

comments to Plaintiff regarding his perception that Plaintiff was judged on the basis of her

appearance and that her sexuality would hinder her job performance had the further effect of

causing Plaintiff to believe that she was not being viewed or evaluated for her job performance,

but rather on her appearance as a woman.  (Mazzarello depo, page 171, line 14 – page 172, line

4).   Based upon the foregoing, and construing all facts and reasonable inferences in Plaintiff's

favor, Plaintiff has established a *prima facie* case of sexual harassment.

**D.  Plaintiff Has Established a *Prima Facie* Case of Gender Discrimination.**

To establish a *prima facie* case of discrimination under the *McDonnell Douglas* analysis, a

plaintiff employee must establish that 1) employee is a member of a protected class; 2) that she

suffered an adverse employment action; 3) that at the time of the adverse employment action she

was performing at a level that met her employer's legitimate job expectations; and 4) that the

employee was treated differently from similarly situated employees.  See ***Brinkley v. Harbour***

27

PDFMAILER.DE   PDF-Cuts werden ohne diese Zeilen mit PDFMAILER kostenlos und gesponsert   Free PDF Mailer   www.pdfmailer.de

*Recreation Club,* 180 F.2d 598 , 609 (4th Cir. 1999).

Defendant mistakenly asserts that Plaintiff has not established discriminatory or retaliatory intent or motive on the part of Lucent for its actions toward Plaintiff leading up to Plaintiff's stated transfer and subsequent resignation in or about August of 2001. To the contrary, the facts as alleged clearly demonstrate discriminatory and retaliatory intent on the part of Mr. Moore and, vicariously, Lucent.

As alleged, Mr. Moore made several statements to Plaintiff about how her appearance and sexuality acted as a hindrance on her ability to advance within Lucent. Mr. Moore on several occasions advised Plaintiff as to some aspect of her employment, only to denounce her when she acted upon his advice. In or about December of 2000, Mr. Moore advised Plaintiff that it should be her stated goal to seek a promotion to a B-Level Manager's position within twelve months. After Plaintiff followed Mr. Moore's advice, she was promptly advised by Ms. Worley that such a goal was not reasonable, and her stated goal was amended to state that it should be Plaintiff's goal to seek promotion to an A-5 Manager's position within nine months. Following this occurrence, Mr. Moore stated in the presence of Ms. Bryan, "Who does Jennifer think she is to ask for a skip level promotion?" despite the fact that it was Mr. Moore who advised Plaintiff to seek the promotion in the first place. Mr. Moore further stated to Plaintiff that he did not find her to be physically attractive when she confronted him about his conduct toward Ms. Hanlon. Mr. Moore also encouraged Plaintiff to tackle Mr. Herr during a company picnic, despite Mr. Moore's knowledge of Plaintiff's allegations against Mr. Herr, as well as Plaintiff's discomfort in interacting with Mr. Herr.

Throughout the course of Plaintiff's employment with Lucent, Plaintiff received favorable

PDFMAILER.com   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

performance reviews, and was considered to be a good employee.  (<u>See</u> Exhibit 4; McFaul depo, page 36, line 11 – page 38, line 2; Moore depo, page 228, lines 17-19.)

Finally, Plaintiff contends that in or about the period of time in which Mr. Moore designated Plaintiff for transfer, Lucent did promote two individuals, Mr. Marcello Barros and Mr. Paul Kates, who, rather than face an unfavorable transfer and threat of termination, were instead promoted to the position of A-5 level managers.  (Mazzarello depo, page 280, line 19 – page 281, line 7, page 290, lines 3-16.)  Both were individuals who had been A-4 level managers, as Plaintiff was at the time, but were promoted to A-5 Manager's positions in or about May of 2001.  These promotions occurred within Lucent during the same period of economic turmoil that Defendant not cites as its justification for Mr. Moore's actions toward Plaintiff.

### E.  Constructive Discharge

A constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.  A plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action, and intolerability of the working conditions."  *Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir. 1985)(citations omitted.)  Deliberateness exists if the actions complained of were intended by the employer as an effort to force the employee to quit.  Intent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions.  Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective person standard of whether a reasonable person in the employee's position would have felt compelled to resign.  *Id.* (citations omitted.)

Plaintiff incorporates the argument contained in Section A of the Argument, <u>supra,</u> as it

PDFMAILER... Print and save on paper with ... sponsored by... www...pdfmailer...

pertains to adverse employment action.  Plaintiff has also alleged that the conduct of Mr. Moore and Mr. Herr, and the resulting conditions of her employment became so intolerable as to force Plaintiff to resign from Lucent, creating a constructive discharge from her position.

Mr. Moore had on several occasions stated that Plaintiff was being evaluated on the basis of her appearance and her sexuality; that on several occasions, Mr. Moore advised Plaintiff as to various aspects of her employment, only to denounce Plaintiff to other employees when Plaintiff heeded his advice; that Mr. Moore acted to undermine Plaintiff in her relationship with Ms. Worley, by advising Plaintiff to seek an unreasonable goal of a promotion to a B-Level manager's position within twelve months, and in failing to notify Ms. Worley that Plaintiff was mentoring Ms. Hanlon, causing further tension between Plaintiff and Ms. Worley; that Mr. Moore had threatened to remove Plaintiff from the mentoring position in which she was a participant after Plaintiff confronted Mr. Moore about his conduct with Ms. Hanlon; that Mr. Moore had stated at that time that he did not find Plaintiff to be physically attractive; that he had believed the allegations that Plaintiff and Ms. Bryan had made against Mr. Herr to be "insignificant and trivial," and dismissed Mr. Herr's conduct by stating "boys will be boys"; and that after being confronted by Ms. Bryan regarding her concerns of retaliation, Mr. Moore stated, "How does it feel to have someone ruin your career without doing anything wrong?"  Based upon the evidence, specifically Mr. Moore's statement to Ms. Bryan regarding the ruination of her career in retaliation for allegations made against Mr. Herr, Plaintiff has established that Mr. Moore did have the specific intent to force Ms. Mazzarello's resignation.

Plaintiff must also establish that the working conditions were intolerable in such a manner that a reasonable person in Plaintiff's position would have felt compelled to resign.  *Bristow,*

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

supra.  Throughout her period of employment, Plaintiff was subjected to unwelcome comments and conduct by Mr. Herr and by Mr. Moore.  Mr. Moore created an atmosphere in the office environment whereby he would advise Plaintiff as to various aspects of her employment, only to denounce her in front of other employees when Plaintiff heeded his advice.  Mr. Moore advised Plaintiff that she was perceived on the basis of her appearance, rather than on her job performance.  Mr. Moore threatened to remove Plaintiff from the mentoring program in which she was a participant after Plaintiff confronted Mr. Moore about his conduct toward Ms. Hanlon.  Plaintiff was aware that Mr. Moore had stated that he believed her allegations against Mr. Herr to be insignificant and trivial, and that Mr. Moore had dismissed Mr. Herr's conduct by stating, "boys will be boys." (Mazzarello Affidavit.)

Plaintiff repeatedly complained of the conduct of Mr. Moore, Ms. Worley, and Mr. Herr towards her.  She also complained of Mr. Moore's conduct to Mr. McFaul, who thought that the allegations were serious enough to contact Mr. Moore with concerns that Mr. Moore's actions appeared to be retaliatory.  Mr. McFaul failed, however, to pursue any investigation into Mr. Moore and Ms. Worley's conduct.  Plaintiff complained about Mr. Moore's and Ms. Worley's conduct to Jelani Rucker, who was a B-Level Manager as well as Plaintiff's mentor.  Mr. Rucker failed to report Plaintiff's complaints and concerns to any higher authority.

In addition to Mr. Rucker and Mr. McFaul, the evidence also establishes that Plaintiff contacted Ms. Gerry Auer and Ms. Laraine Scarpon in the Human Resources department regarding the conduct of Mr. Moore, Mr. Herr, and Ms. Worley.  Plaintiff reported by telephone her complaints related to Mr. Moore, Mr. Herr, and Ms. Worley to Ms. Gerry Auer of Lucent's Corporate Human Resources Department in or about February of 2001.  Ms. Auer demonstrated

PDFMAILER.COM Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

hostility towards plaintiff for bringing the complaint, refusing to allow Ms. Mazzarello to speak to her away from the office or on the telephone line that Ms. Mazzarello was using. After Ms. Mazzarello was able to relate her concerns of harassment and retaliation by Mr. Moore and Ms. Worley to Ms. Auer, Ms. Auer stated that Lucent does not retaliate against employees, and further refused to accept Plaintiff's statement. (Mazzarello depo, 2/27/03, page 165, line 9 – page 166, line 21.) Defendant Lucent took no action as a result of Ms. Mazzarello's complaints.

In or about the middle of March 2001, Plaintiff contacted Laraine Scarpon, Human Resource Manager, to discuss the above issues within Defendant Lucent. Ms. Scarpon stated during the course of this conversation that she was unaware that the foregoing situations existed. However, Defendant Lucent took no action as a result of this conversation. In or about the middle of May of 2001, Plaintiff reported the above incidents to Ms. Scarpon and again no action was taken after Plaintiff's report was made. Finally, Plaintiff complained of the conduct of Mr. Moore, Ms. Worley, and Mr. Herr to Mr. Ed Sanford on or about July 31, 2001, after Plaintiff learned that she was to be transferred to a technical consultant's position. Lucent took no action in response to Plaintiff's complaints.

Finally, Plaintiff was advised by Ms. Bryan of a conversation she had with Ms. Denise Panyick-Dale, in which Ms. Panyick-Dale stated that she wanted Ms. Bryan to warn Plaintiff that Plaintiff's job was in jeopardy, and that Plaintiff should begin to seek new employment. Ms. Panyick-Dale was in possession of information as a C-Level Manager within Lucent that Plaintiff's job was in jeopardy. As a result of being advised by Ms. Bryan of Ms. Panyick-Dale's warning, Plaintiff reasonably concluded that she was to be terminated from Lucent.

As a result of the conduct of Mr. Moore, Mr. Herr, and Ms. Worley, as a result of the

failure of officials within Lucent's Corporate Human Resources and Verizon Customer Team

Human Resources Department to respond to Plaintiff's repeated complaints of harassment and

discrimination, as Plaintiff was advised by members of Lucent's management that her position

within Lucent was in jeopardy, and as Plaintiff was placed in a situation in which she was facing

an adverse transfer to a department that Mr. Moore had previously stated would be hit hard

during Lucent's upcoming layoffs, Plaintiff reasonably believed that the conditions of her

employment had become intolerable.  Moreover, Plaintiff's job environment was such that her

complaints and attempts to seek relief from the above conduct fell on deaf ears, or certainly upon

individuals who failed to act upon Plaintiff's complaints.  As such, the working conditions faced

by Plaintiff were such that Plaintiff was compelled to resign, and were such that a reasonable

person in Plaintiff's position would have felt compelled to resign, as well.

      **F.**     **Defendant's Stated Reasons for Transferring Plaintiff Are Pretextual.**

     Defendant asserts that it legitimately designated Plaintiff for transfer to a technical

consultant's position due to the fact that 75% of Lucent's technical consultants had accepted early

retirement through Lucent's "5 and 5" plan, and that Lucent required employees to fill the "holes"

left by the departures of those employees.  Defendant further asserts that the proposed transfer

was in Plaintiff's best interests, as it would allow her to develop a technical background, which

Plaintiff lacked.  Plaintiff did not have an engineering or telecommunications background, or in

fact any technical background at all. (Mazzarello depo, 2/27/03, page 35, line 15 – page 36, line

3.)  However, despite Defendant's assertions to the contrary, Mr. Moore did not advise Plaintiff

that technical experience was necessary to advance within Lucent.  In fact, in Plaintiff's

experience it was not necessary to have a technical background at Lucent in order to advance to a

PDFMAILER.COM   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.com

B-Level manager's position, or beyond. Instead, those who advanced within Lucent appeared to be those individuals with greater responsibility toward customers or those individuals who exceeded their job expectations. *Id.,* page 267, lines 3-15.

Defendant concedes that Plaintiff did not have a technical background. (Defendant's Memorandum in Support, page 12. In fact, Plaintiff's qualifications at the time of the stated transfer were not compatible with the responsibilities of the technical consultant's position. According to Lucent's position description, a technical consultant at the time was primarily responsible for technical support as part of customer inquiries as to product information, as well as for customer inquiries regarding price quote information for specific products. (See Exhibit 14.) The technical consultant also participated in the support of cross- product line proposals, and organized and led the Technical, Services, and Pricing component of sales proposals. *Id.*

Plaintiff did not have an engineering or telecommunications background, or in fact any technical background at all. (Mazzarello depo, 2/27/03, page 35, line 15 – page 36, line 3.) This is in contrast to those individuals who did occupy the technical consultant's position, who either had college degrees in technical fields, or had more extensive technical experience than Plaintiff. (Mazzarello Affidavit.) The typical background of a Lucent technical consultant is represented in Mr. T.R. Maximiliano Duarte, who was employed with Lucent as a Technical Consultant from 1999 through 2002. Mr. Duarte has a Bachelor of Science Degree in Mechanical and Aerospace Engineering from Rutger's University, experience in the repair and, improvement and testing of gamma ray detectors, experience in the research of ceramic materials, and extensive knowledge and experience using computers, including experience using Fortran, Pascal, Basic, and Virtual Basic computer languages, among others. (See Exhibit 18.) By contrast, Plaintiff has a Bachelor

34

PDFMAILER.com Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

of Science Degree in Business Administration and no knowledge or experience of Fortran, Pascal, Basic, or Virtual Basic computer languages. (Mazzarello Affidavit.)

Defendant further fails to establish the legitimate motive behind Plaintiff's transfer to a technical consultant's position. Other employees of technical backgrounds superior to Plaintiff's found themselves laid off from technical consultant's position. Mr. Duarte, for example, was laid off from Lucent the layoff that occurred after Plaintiff resigned from Lucent in or about June of 2002, despite Mr. Duarte's vastly superior qualifications, in terms of technical education and experience, and despite Lucent's alleged "need to fill the technical consultant's positions with good, qualified employees. (Mazzarello Affidavit.)

Based upon the foregoing, Defendant has failed by a preponderance of the evidence to establish that it had a legitimate, non-discriminatory reason behind its plan to transfer Plaintiff to a technical consultant's position, for which she was not qualified.

### G. Plaintiff's Claim For Retaliation.

To establish a *prima facie* case of retaliation, a plaintiff-employee must establish that 1) Plaintiff engaged in a protected activity; 2) the employer took an adverse action against the plaintiff; and 3) a causal connection exists between the protected activity and the adverse action. *Nichols v. Harford County Board of Ed.*, 189 F.Supp. 2d 325 (D. Md. 2000).

In the instant matter, it is undisputed that in or about Plaintiff made allegations of sexual harassment against Mr. Herr to member of Lucent's Human Resources Department, in accordance with Lucent's stated sexual harassment policy. (See Lucent's Sexual Harassment Policy, attached hereto as Exhibit 20.) Between February and August of 2001, Plaintiff made further complaints regarding Mr. Moore, Ms. Worley, and Mr. Herr to Mr. Jelani Rucker, as

Plaintiff's mentor; to Mr. Richard McFaul, as Plaintiff's former direct supervisor and as a C-Level
Manager within Lucent; to Ms. Gerry Auer, as Lucent's Corporate Human Resources
representative, and Ms. Laraine Scarpon, in her capacity as the Human Resource Manager on
Lucent's Verizon Customer Team.  Additionally, Plaintiff spoke to Mr. Moore, as an involved
party and as her supervisor, regarding the office environment resulting from Mr. Moore's conduct
toward Ms. Hanlon.  Plaintiff further related her concerns regarding the conduct of Mr. Moore
and Mr. Herr to Ms. Worley during Plaintiff's mid-year review, in accordance with Lucent's
stated sexual harassment policy.  These actions all constitute oppositional activity protected under
Title VII.  42 U.S.C. §2000e-3; *Laughlin v. Metropolitan Washington Airports*, 149 F. 3d 253,
259 (4th Cir. 1998) ("Opposition activity encompasses utilizing informal grievance procedures as
well as staging informal protests and voicing one's opinions in order to bring attention to an
employer's discriminatory activities.") (citations omitted.)

Plaintiff has established facts that, if true, illustrate retaliatory motive on the part of Mr.
Moore and, vicariously, Lucent, in reference to Plaintiff and Ms. Bryan's claims of sexual
harassment on the part of Mr. Herr.  Mr. Moore stated that he believed the allegations to be
"trivial and insignificant."  Mr. Moore further stated that "boys will be boys" in reference to Mr.
Herr's conduct.  When Ms. Bryan confronted Mr. Moore about her concerns that she was being
retaliated against for reporting allegations of sexual harassment against Mr. Herr, Mr. Moore
responded by stating, "How does it feel to have someone ruin your career without doing anything
wrong?"  These comments, if true, clearly demonstrate retaliatory animus toward Plaintiff and
Ms. Bryan as a result of their allegations against Mr. Herr.

Plaintiff has also alleged facts that, if true, establish retaliatory intent on the part of Mr.

36

PDFMAILER.COM Print and send PDF files as Emails with any application, ad-sponsored and free of charge www.pdfmailer.com

Moore independent of Plaintiff's allegations against Mr. Herr. After Plaintiff began to mentor Ms. Hanlon in or about February of 2001, Plaintiff confronted Mr. Moore regarding her feelings of discomfort, the discomfort of other employees, and the conduct of Mr. Moore and Ms. Hanlon in the office, and further discussed the mentoring advice that Plaintiff provided to Ms. Hanlon regarding her conduct toward Mr. Moore. During the course of this discussion, Mr. Moore threatened to remove Plaintiff from the mentoring program in which she was a participant.

Following Mr. Moore's confrontation with Plaintiff regarding his relationship with Ms. Hanlon in the office, Mr. Moore made negative comments regarding Plaintiff to Mr. Rucker, stating that he was "not happy" with comments that Plaintiff had made, ostensibly about Mr. Moore's alleged relationship with Ms. Kelly Hanlon. (Rucker, depo, page 63, line 7 – page 64, line 8, page 64, line 19 – page 65, line 17.) Within five months of his confrontation with Plaintiff, Mr. Moore designated Plaintiff for transfer to a technical consultant's position, a position for which she had had no prior technical background, and for which she was not qualified to assume. This designation was made with Mr. Moore's stated knowledge or opinion that Lucent's technical consultant would be among those most vulnerable during Lucent's upcoming layoffs.

Finally, a causal connection exists between Mr. Moore's retaliatory intent against Plaintiff in designating her for transfer to a technical consultant's position. Plaintiff's designation for transfer occurred within five months of Plaintiff's confrontation with Mr. Moore regarding his relationship with Ms. Hanlon, and within weeks of Plaintiff's mid-year review with ms. Worley. Mr. Moore conceded in deposition that he had met with Ms. Worley, and that Ms. Worley had advised him that Plaintiff had stated concerns of mistreatment and a wish not to meet with Mr.

PDFMAILER.DE Print and send PDFs with one mouse click. Sponsored by www.pdfmailer.de

Moore alone. (Moore depo, page 227, line 19 – page 228, line 4.)[10]

## V.  Conclusion

WHEREFORE, for the foregoing reasons, because there is a dispute of material facts, and because Defendant is not entitled to summary judgment as a matter of law, Jennifer Mazzarello, Plaintiff, requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully Submitted,



\_\_\_\_/s/_____
Paul V. Bennett, Esq.
Law Office of Paul V. Bennett
133 Defense Highway, Suite 209
Annapolis, Maryland 21401
(410.) 974-6000
Federal Bar No: 10324

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May, 2003 that a copy of the foregoing Opposition to Defendant's Motion for Summary Judgment was sent by electronic filing and by hand delivery to Robert R. Niccolini, Esquire, McGuire-Woods, LLP, 7 St. Paul Place, Suite 1000, Baltimore, Maryland 21202, Attorney for Defendant.

\_\_\_\_/s/_____
Paul V. Bennett, Esq.

---

10 Defendant further argues a lack of temporal proximity in relation to Plaintiff's allegations against Mr. Herr. (Defendant's Memorandum in Support, page 30.) Plaintiff notes that Mr. Moore had not been placed in a position to have supervisory control of Plaintiff and Ms. Bryan until August of 2000, upon his promotion to the D-Level Director's position.

PDFMAILER.de   Print and send PDF files as Emails with any application, ad-sponsored and free of charge   www.pdfmailer.de

INDEX OF EXHIBITS


1.      Deposition of Jennifer Mazzarello, 2/27/03

2.      Deposition of Lisa Bryan

3.      Deposition of Chris Herr

4.      Performance Reviews and Evaluations

PDFMAILER ... sponsored ... mailer ...

5.       Deposition of Richard McFaul

6.       Deposition of Tom Moore

7.       Chris Herr e-mail to Jennifer Mazzarello, 5/27/99

8.       Report Card Coordinators' meeting minutes, 10/27/99

9.       Affidavit of Lisa Bryan

10.     Affidavit of Tammy Shapiro

11.     Career Development Plan Form - Twelve Months

12.     Career Development Plan Form - Nine Months

13.     Affidavit of Jennifer Mazzarello

14.     Deposition of Laraine Scarpon

15.     Affidavit of Erika Adams

16.     Deposition of Jelani Rucker

17.     Lucent-North America Job Descriptions

18.     Resumé of Max Duarte

19.     Memorandum for File

20.     Lucent Sexual Harassment Policy.