IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JENNIFER MAZZARELLO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AMD 02 CV 3576 |
| LUCENT TECHNOLOGIES INC., | * | |
| Defendant. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lucent Technologies Inc. ("Lucent"), through undersigned counsel, does hereby respectfully reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Plaintiff's "Opposition"). In her Opposition, Plaintiff essentially stretches the facts to the breaking point in her effort to suggest that she was subjected to intolerable working conditions and a pattern of harassment. While attempting to string together such factual speculation, however, Plaintiff ignores the two most important legal obstacles before her: namely, that her claim for sexual harassment is time-barred, and that she is unable to establish that she suffered an adverse action cognizable under the law, much less that she was constructively discharged. As a result, Plaintiff's Complaint should be summarily dismissed with prejudice as a matter of law.

I. **PLAINTIFF'S CLAIMS FOR SEXUAL HARASSMENT SHOULD BE SUMMARILY DISMISSED**

A. **Plaintiff's Sexual Harassment Claim is Time-Barred**

Plaintiff concedes in her Opposition that her claim for sexual harassment is subject to a 300-day limitations period, and that the only action or conduct at issue that occurred within the limitations period (on or after July 24, 2001) was the proposed reassignment of Plaintiff to a technical consultant position. Plaintiff argues that this potential reassignment by Mr. Tom Moore was part of the same series of unlawful employment practices, and that her sexual harassment claim is therefore saved by the continuing violation theory expressed in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002). In making this argument, however, Plaintiff misconstrues Morgan.

The Morgan decision does not stand for Plaintiff's asserted proposition that allegedly harassing conduct that is otherwise time-barred becomes actionable by virtue of the occurrence of an adverse employment action within the limitations period. Rather, the Supreme Court in Morgan clearly explained that a different analysis applies to a cause of action based upon discreet acts of discrimination versus hostile work environment claims. Discreet acts of discrimination, such as termination or failure to promote, each constitute separate unlawful practices that must be the subject of a charge within the statutory time frame or be barred by the statute of limitations. See Morgan, 536 U.S. at 110-15. The Supreme Court specifically noted that "discreet acts that fall within the statutory time period do not make timely acts that fall outside the time period." Id. at 112. In contrast, hostile work environment claims may be based on conduct that occurred outside the limitations period only if that conduct is "part of the same

actionable hostile work environment practice" as the conduct within the limitations period. Id. at 120.

In the present matter, every incident of alleged harassment offered in support of Plaintiff's hostile work environment claim, and which could therefore be potentially viewed as part of a single pattern of harassment, falls outside the limitations period. In contrast, the potential transfer to the technical consultant position is a discreet, separate act unrelated to Plaintiff's hostile work environment allegations. Nothing in Morgan even suggests that a plaintiff may use an alleged discreet act of discrimination within the limitations period to save or revive a hostile work environment claim based on incidents all of which occurred outside the limitations period.

Moreover, the potential transfer, as a matter of law, simply does not constitute the type of intolerable working conditions necessary to adversely affect Plaintiff's work environment, and thus give rise or contribute to a hostile work environment claim. See, e.g., Taylor v. Virginia Union University, 193 F.3d 219, 237-38 (4th Cir. 1999) (noting that "denial of a single promotional opportunity is not sufficient to create an intolerable working environment"); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994) (holding that satisfaction with work assignments or unpleasant conditions does not rise to "intolerable working conditions" under Title VII). As the potential reassignment does not rise to the level of an intolerable working condition as a matter of law, Plaintiff cannot offer it as part of her hostile work environment claim, and therefore cannot use it to defeat Lucent's limitations defense. Morgan at 120.

Finally, as discussed below, the potential transfer to a technical consultant position did not constitute an adverse action cognizable under Title VII. If the single act allegedly within the limitations period did not even rise to the level of an adverse action, it can hardly serve as the

sole basis for Plaintiff's assertion of a continuing violation. Plaintiff's claim for sexual harassment is therefore time-barred and should be summarily dismissed.

> **B.     In the Alternative, Plaintiff's Sexual Harassment Allegations Related to Chris Herr are Barred by Lucent's Affirmative Defense, and Plaintiff's Allegations After August of 1999 are Insufficient as a Matter of Law to Create a Hostile Work Environment**

In her Opposition, Plaintiff agrees with Lucent as to the legal parameters of the Faragher defense, but then argues that Lucent did not exercise reasonable care to prevent and promptly correct Mr. Herr's harassing behavior. Specifically, Plaintiff maintains that she was not immediately and completely removed from Mr. Herr's supervision following her complaint; that no written warning was given to Mr. Herr; and that a question remains as to when Mr. Herr completed the harassment training required by Lucent. None of these arguments, however, are sufficient to undermine Lucent's affirmative defense.

Plaintiff conceded in her deposition that she was transferred from Mr. Herr's supervision in 1999. (*Plaintiff Depo., attached hereto as Exhibit A, at 48 line 16 – 49 line15*). In her Opposition, Plaintiff argues that, despite this transfer, she was still required to "interact" with Mr. Herr for several months on limited business matters, and that Mr. Herr completed her year-end performance review. Such minor interactions, however, do not refute the fact, conceded by Plaintiff herself in her deposition, that she was indeed ultimately transferred from Mr. Herr's supervision at her own request. In fact, although Plaintiff in her Opposition complained that Mr. Herr completed her year-end review in 1999, she neglects to mention that Mr. Herr actually gave her a very good evaluation. (*Plaintiff Depo. (Ex. A) at 160 lines 14-21*). Although Plaintiff alleges several subsequent incidents involving Mr. Herr that she supposedly found offensive in one way or another, she alleges no further conduct by Mr. Herr after she was transferred from his supervision in 1999 which, alone or in concert, even arguably rises to the level of harassing

4

behavior. In the absence of further harassing conduct, it is difficult to understand how Lucent's corrective action was deficient in any respect.

Although Lucent chose not to issue a written warning to Mr. Herr, the undisputed evidence establishes that the verbal reprimand given to Mr. Herr was extremely severe: specifically, that unless Mr. Herr's behavior stopped immediately, he would be terminated without further warning or notice. (*Herr Depo., attached hereto as Exhibit B, at 141 line 11 – 142 line 10*). In a like manner, regardless of the delay which may or may not have occurred in Mr. Herr attending sexual harassment training, there is no dispute in the record that, ultimately, Mr. Herr did in fact attend such training. It is exceedingly ironic that Plaintiff in her Opposition now expresses reservations about Lucent's corrective action, when during her deposition, she conceded that she did not want Mr. Herr fired as a result of the 1999 incidents, and that she never asked Lucent to transfer Mr. Herr to another office to avoid further "interaction." (*Plaintiff Depo. (Ex. A) at 164 line 21 – 165 line 8*). Thus, despite Plaintiff's after-the-fact argument, the undisputed facts establish that Lucent exercised reasonable care to prevent and correct the inappropriate behavior of Mr. Herr, that such action was effective, and that Lucent is therefore able to establish a complete affirmative defense under Faragher as to any claim of harassment arising from incidents involving Mr. Herr prior to September of 1999. See, e.g., Church v. State of Maryland, 180 F. Supp. 2d 708, 736-8 (D. Md. 2002).

With respect to any alleged harassing behavior after September of 1999, Plaintiff in her Opposition speaks extensively about alleged additional complaints which were made to Mr. Moore, Ms. Worley and Lucent's Human Resources Department, complaints which Plaintiff maintains were not adequately addressed. Lucent of course denies these allegation. Even if such allegations are taken as true for summary judgment purposes, however, Lucent has not attempted

to assert the Faragher defense for conduct after September of 1999.  As a result, the alleged failure of Lucent's internal complaint procedures after September of 1999 is not the issue before the Court on summary judgment.  Instead, the issue is whether the conduct which Plaintiff alleges to have occurred between September of 1999 and her resignation in August of 2001 was severe and persuasive enough to create a hostile work environment.  When Plaintiff's specific allegations are examined, it becomes clear that the allegations are simply not sufficient to support a hostile work environment claim as a matter of law.

In her Opposition, Plaintiff maintains that Mr. Moore said that her "sexuality" would impede her ability to advance; told her she would have to prove she was "more than just boobs and legs;" questioned her choice of dress; and objected to her comments about an allegedly inappropriate relationship between himself and Ms. Kelly Hanlon.  See Plaintiff's Opposition at 26-27.  Mr. Moore in his deposition strenuously denied all of these allegations.  Even if the allegations are assumed to be true for purposes of summary judgment, however, they represent merely four occurrences over almost a two-year period.  This type of sporadic conduct was neither frequent nor severe, was in no manner physically threatening, and thus did not create a "work environment so polluted with sexual harassment" as to alter the terms and conditions of Plaintiff's employment.  Klein v. Certainteed Corp., 205 F. Supp. 2d 468, 473 (D. Md. 2002).  As a result, Plaintiff's claim for sexual harassment and hostile work environment, once again, should be summarily dismissed.

    **II.**    **PLAINTIFF'S CLAIMS FOR GENDER DISCRIMINATION AND RETALIATION SHOULD BE SUMMARILY DISMISSSED**

In her Opposition, Plaintiff does not dispute the applicability of the McDonnell Douglas framework to the present matter, nor the prima facie requirements for stating a claim of either gender discrimination or retaliation under Title VII.  Instead, Plaintiff strings together various

lines of supposition in an attempt to create the appearance of a prima facie claim. When the smoke is cleared, however, it is evident that Plaintiff is utterly unable to establish as a matter of law that she suffered any adverse action, much less that Lucent's legitimate reasons for its actions were mere pretext for either intentional gender discrimination or retaliation. As a result, summary judgment should be granted to Lucent on Plaintiff's claims of gender discrimination and retaliation.

      **A.**      <u>**Plaintiff has Failed to Establish a Prima Facie Claim of Either Gender Discrimination or Retaliation**</u>

           **1.**      <u>**Plaintiff cannot establish a Legally Cognizable Adverse Action in support of her Gender Discrimination or Retaliation Claims**</u>

In her Opposition, Plaintiff spends an extensive amount of time arguing that she was constructively discharged, that Mr. Moore's comments created intolerable work conditions, and that the potential transfer to a technical consultant position was "setting her up" for layoff. After reviewing pages of such speculative argument, however, it becomes clear that Plaintiff has ignored the most important issue: namely, that she resigned before she was ever actually transferred to the technical consultant position. Under applicable Fourth Circuit law, a potential but unconsummated transfer does not constitute an adverse employment action, and is therefore insufficient to meet the prima facie requirements of either a gender discrimination or retaliation claim. See <u>Haynie v. St. Mary's County</u>, 2001 WL 194297, * 8 (D. Md. 2001) (noting that an attempted transfer does not constitute an adverse employment action). As a result, based on this point alone, Plaintiff's claims for gender discrimination and retaliation should be summarily dismissed.

Moreover, even if Plaintiff could establish that she had actually been reassigned to the technical consultant position, her supposition about the negative nature of the position is not

sufficient to establish that the reassignment constituted an adverse employment action.  As this Court has stated, "a purely lateral transfer does not constitute an adverse employment action." <u>Nichols v. Comcast Cablevision of Maryland</u>, 84 F. Supp. 2d 642, 654 (D. Md. 2000) (citations and quotation omitted).  To establish that a reassignment is an adverse employment action, Plaintiff must show that the transfer had the effect of reducing her compensation or otherwise materially and substantially impacting the terms and conditions of her employment.  <u>See</u> <u>id</u>.  The undisputed evidence before the Court, however, establishes that, regardless of the experience allegedly required to be a technical consultant or speculation as to lay-off down the line, Plaintiff's potential transfer to this position would have been a lateral move without any decrease in compensation or other terms and conditions of employment.  (*Moore Depo., attached hereto as Exhibit C, at 222 line 17 – 223 line 16; Worley Depo., attached hereto as Exhibit D, at 142 lines 3-13*).  A transfer to the technical consultant position, therefore, would not have constituted an adverse employment action.

  Plaintiff attempts to mask her lack of a legally cognizable adverse action by collapsing this analysis into her constructive discharge arguments.  Plaintiff agrees with Lucent that the basis of a constructive discharge claim is deliberate intent and intolerable work conditions.  <u>See</u> Plaintiff's Opposition at 29; Lucent's Memorandum in support of Summary Judgment ("Memorandum") at 25.  Plaintiff then discusses various alleged comments by Mr. Moore (comments which Mr. Moore denies ever making) in an effort to establish both deliberate intent on the part of Lucent and the intolerability of Plaintiff's working conditions.

  Throughout the course of her extensive recitation on these issues, however, Plaintiff conveniently fails to address the most important fact: that she resigned prior to being transferred to the technical consultant position, indicating in writing to Lucent that she was taking a position

with another company that "represents a positive move toward fulfilling my career goals." (*Plaintiff Depo. (Ex. A) at 301 lines 7-18, 302 lines 1-5 and Exhibit 9*).  In <u>Taylor v. Virginia Union University</u>, a case with strikingly similar facts, the Court noted that plaintiff's resignation letter, in which the plaintiff said that she enjoyed working in her position but was resigning to "further develop [her] career in areas that [were] more in line with [her] long term goals," bellied any contention that she was forced to resign.  <u>Taylor</u>, 193 F. 3d 219, 228 and 238 (4th Cir. 1999).  In a similar fashion, Plaintiff in this matter indicated to Lucent that she was leaving Lucent for a "better opportunity."  (*Plaintiff Depo. (Ex. A) at 309 line 15 – 311 line 2 and Exhibit 11*).  This undisputed evidence, which Plaintiff understandably fails to mention in her Opposition, completely undermines any claim for constructive discharge.  The evidence that Plaintiff left Lucent voluntarily rather than in whole or in part because of a proposed job transfer within the company is undisputed.

      Finally, Plaintiff's allegations of various comments by Mr. Moore, even if true, simply do not establish that either Mr. Moore or Ms. Worley, Plaintiff's supervisors and the decision-makers at the time of her resignation, had any "specific intent" to force her to leave Lucent.  To the contrary, had Mr. Moore or Ms. Worley wished to "force" Plaintiff out, they could easily have included her in any of three reductions in force on the Verizon team in February, March and August of 2001.  The undisputed evidence, however, establishes that Plaintiff was never once in jeopardy of losing her job during these downsizings, and that, at the time of her resignation in September of 2001, Plaintiff had in fact safely made it through all three rounds of layoffs.  (*Moore Depo. (Ex. C) at 152 line 16 – 153 line 11 and 225 line 18 – 226 line 3*).  As a result, Plaintiff cannot establish constructive discharge, and her claims of gender discrimination and retaliation must be summarily dismissed.

### 2. Plaintiff cannot Establish that she was Treated Differently from Similarly Situated Employees to adequately support her Gender Discrimination Claim

Plaintiff included in her Opposition a conclusory allegation that she was denied a promotion to the A-5 level at the same time that two men, Mr. Marcello Barros and Mr. Paul Kates, were promoted to A-5 level. See Plaintiff's Opposition at 29. In making this argument, however, Plaintiff ignores and fails to dispute the evidence presented in Lucent's original Motion for Summary Judgment that Mr. Barros and Mr. Kates were simply not similarly situated to Plaintiff. See Lucent's Memorandum at 28. Specifically, both had Masters of Business Administration degrees (Plaintiff did not); both were in direct sales (Plaintiff was not); and neither was under the supervision of either Mr. Moore or Ms. Worley, the decision-makers in Plaintiff's case. See id. Plaintiff is thus unable to establish that she was treated differently than other similarly situated employees in support of her gender discrimination claim.

Plaintiff also fails to mention the undisputed fact that, after her resignation, her job duties were assumed by a woman, Ms. Toby Adams. (*Plaintiff Depo. (Ex. A) at 255 line 19 –256 line 11*). Moreover, Plaintiff's direct supervisor was a woman as well. Under such circumstances, Plaintiff cannot establish a prima facie claim of gender discrimination as a matter of law. See, e.g., Brown v. Housing Authority of Calvert County, 150 F. Supp. 2d 856, 869 (D. Md. 2001) (noting that "a plaintiff's prima facie case ordinarily fails in a discriminatory discharge case when he or she is replaced by a member of his or her protected group"); Demesme v. Montgomery County Government, 63 F. Supp. 2d 678, 683 (D. Md. 1999) (noting that the "fact that the decision makers were of the same protected class suggests no discriminatory motivation").

### 3. Plaintiff is unable to establish a Causal Connection in support of her Claim of Retaliation

In her Opposition, Plaintiff relies almost exclusively on certain alleged comments by Mr. Moore to support a causal connection between her complaints about Mr. Herr and her alleged constructive discharge. Specifically, Plaintiff alleges that Mr. Moore indicated that he felt the complaints against Mr. Herr were "trivial;" that in referring to Mr. Herr's conduct he stated "boys will be boys;" and that he told Ms. Bryan (a B-level manager who has also sued Lucent): "How does it feel to have someone ruin your career without doing anything wrong?" Mr. Moore, in his deposition, emphatically denied making any of these statements. Even if the statements are taken as true for purposes of summary judgment, however, Plaintiff still fails to establish a casual connection as a matter of law.

First, to suggest that Mr. Moore would wait years to take "retaliatory" action against Plaintiff for her complaints about Mr. Herr is nothing short of ridiculous. The record evidence shows that Mr. Moore was aware of Plaintiff's complaints about Mr. Herr by the Fall of 1999. The alleged constructive discharge did not occur until almost a year and a half later, however, refuting the existence of any casual connection. See Church v State of Maryland, 180 F. Supp. 2d 708, 745 (D.Md. 2002) ("[A] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action … negates any inference that a causal connection exists between the two"). In fact, Mr. Moore had the opportunity to include Plaintiff in any of the three downsizings in February, March or August of 2001, but did not. (*Moore Depo. (Ex. C) at 152 line 16 – 153 line 11 and 225 line 18 – 226 line 3*). Such facts firmly refute any claim of a casual connection between Plaintiff's complaints and the alleged retaliatory act.

11

Second, even assuming that a comment allegedly made by Mr. Moore to another employee has anything to do with any action he may have taken with respect to Plaintiff, there is no evidence in the record that Mr. Moore sought to "ruin" Plaintiff's career. To the contrary, the undisputed evidence establishes that, as a result of the early retirement offer in the summer of 2001, the Lucent Verizon team had lost 75% of its technical consultants, and had a desperate need to fill these "holes." (*Moore Depo. (Ex. C) at 222 line 19 - 223 line 9; Worley Depo. (Ex. D) at 140 lines 2-6*). Plaintiff contends that Mr. Moore told her that the technical consultants would be first in line for lay-off; even if this is true, however, the massive loss of technical consultants to early retirement clearly changed the circumstances. Far from "ruining" her career, Mr. Moore was offering Plaintiff an opportunity. Against such backdrop, the alleged comment of Mr. Moore to Ms. Bryan has no real bearing on the issue of casual connection.

In the end, Plaintiff's only real argument on casual connection is that her potential transfer occurred approximately five months after her "confrontation" with Mr. Moore about Ms. Hanlon. Plaintiff, however, cannot prove a causal connection merely by showing temporal proximity between a complaint and an adverse event. See Tolley v. Health Care and Retirement Corporation, Inc., 1998 WL 24972, * 4 (4th Cir.1998). See also Bradley v. Widnall, 232 F.3d 626 (8th Cir. 2000) ("[g]enerally, more than a temporal connection between the protected conduct and adverse employment action is required to present a genuine factual issue of retaliation").

In Tolley, a plaintiff filed an age discrimination and retaliation claim against her employer, alleging that her employer wrongfully terminated her four months after she participated in the protected activity of publicly protesting the termination of her 51-year-old supervisor. See id. at * 1-2. The Court found:

> The only evidence that [the plaintiff] advances to support this [retaliation] claim, however, is the single fact that [the plaintiff] was discharged four months later. "Temporal proximity ... is simply too slender a reed on which to rest a retaliatory ... discharge claim." <u>Wagner v. Wheeler</u>, 13 F.3d 86, 91 (4th Cir. 1993) (stated in the context of a 42 U.S.C. § 1983 discrimination claim); <u>see</u> <u>also</u> <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1387 (4th Cir. 1995).

<u>Id.</u> at * 4. Thus, without more than a temporal proximity of five months, Plaintiff is unable to establish a prima facie case of retaliation, and her claim should therefore be dismissed.

    **B.**     <u>**Plaintiff is Unable to Establish that Lucent's Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for its Actions were Mere Pretext for Either Intentional Gender Discrimination or Retaliation**</u>

In her Opposition, Plaintiff's only proof of pretext revolves around the allegation that Mr. Moore's stated reason for the potential transfer of Plaintiff to the technical consultant position was false. Specifically, Plaintiff asserts that Mr. Moore never told Plaintiff that having a technical background was necessary to advance at Lucent; and that, without a technical background, Plaintiff was doomed to fail as a technical consultant. <u>See</u> Plaintiff's Opposition at 34-35. Neither of these assertions, however, is correct.

Plaintiff claims in her Opposition that "Mr. Moore did not advise [her]… that technical experience was necessary to advance within Lucent." <u>See</u> Opposition at 34. Under oath, however, Plaintiff told a very different story. Plaintiff specifically testified that: "[w]hat Mr. Moore told me was that if I wanted to become a sale executive that more technical experience would be helpful…" (*Plaintiff Depo. (Ex. A) at 267 lines 7-9*). Thus, the only one who has apparently made a false statement is Plaintiff herself.

Plaintiff next argues that she lacked sufficient technical skills to succeed as a technical consultant, and that "typical" technical consultants, such as Mr. Duarte,[1] had engineering or telecommunications backgrounds. See Opposition at 34-35. Mr. Duarte, however, who had very high-level experience and skills, was by no means a "typical" technical consultant. (*See Second Affidavit of Tom Moore, attached hereto as Exhibit E, at para. 6*). To the contrary, the technical consultant position did not require an engineering, telecommunications or computer background, and many people without such backgrounds succeeded in the position. (*Moore Affidavit (Ex. G) at para. 5*).

Other than Plaintiff's own subjective assessment, the undisputed evidence establishes that the technical consultant position would have been a lateral move for Plaintiff, without any decrease in compensation, and represented a chance for Plaintiff to gain the technical expertise she needed to advance her career. (*Moore Depo. (Ex. C) at 222 line 17 – 223 line 16; Worley Depo. (Ex. D) at 142 lines 3-13; Moore Affidavit (Ex. E) at para 4*). It is also crucial to remember that Plaintiff was never fired by Lucent, but rather chose voluntarily to resign at the urging of Ms. Bryan. By her own admission, Plaintiff considered her new position at Signal "a positive move towards fulfilling my career goals;" that she was leaving for a "better salary;" and that her new job was simply (in her own words) a "better opportunity." (*Plaintiff Depo. (Ex. A) at 301 lines 7-18, 302 lines 1-5, 305 line 3 – 306 line 8 , 309 line 15 – 311 line 2 and Exhibits 9-11; Worley Depo. (Ex. D) at 62 lines 2-14*). In the final analysis, Plaintiff bears the burden of showing that Lucent's proffered reasons for its actions were not its true reasons, but were a mere

---

[1] Plaintiff has attached a copy of Mr. Duarte's resume as Exhibit 18 to her Opposition, as well as the purported job description for a technical consultant at Exhibit 14. Plaintiff has failed to authenticate these documents, however, and they are thus not even properly before the Court on summary judgment. Lucent would also point out to the Court that these documents were never produced by Plaintiff, or by Lucent, during the course of discovery.

pretext for intentional and prohibited gender discrimination and/or retaliation.  See Langerman v. Thompson, 155 F.Supp.2d 490, 496 (D.Md. 2001); Chika, 179 F.Supp.2d at 581.  Plaintiff has woefully failed to meet this burden, and her claims should therefore be dismissed as a matter of law.

### III.    CONCLUSION

For the foregoing reasons, as well as the reasons contained in Lucent's original Memorandum in Support of its Motion for Summary Judgment, Lucent respectfully requests that its Motion for Summary Judgment be granted and that judgment be entered in favor of Lucent and against Plaintiff as a matter of law.

Respectfully submitted,

_____/s/_____
Robert R. Niccolini
McGuireWoods LLP
7 Saint Paul Street, Suite 1000
Baltimore, MD  21202
410-659-4400

Attorney for Defendant
Lucent Technologies Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of June, 2003, a copy of Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, which was electronically filed in this case on June 10, 2003, was mailed, first-class, postage prepaid to Paul V. Bennett, Esquire, counsel for Plaintiff, 133 Defense Highway, Suite 209, Annapolis, Maryland 21401.

                                                      /s/
                                          Robert R. Niccolini