Page 3

July 23, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

SEP 1 5 2003

```
————————————————————  )
JENNIFER MAZZARELLO )            )
        Plaintiff                )
                                 )
   v.                            )   Civil Docket No. AMD 02-3576
                                 )
LUCENT TECHNOLOGIES, INC.        )
                                 )
        Defendant                )
————————————————————  )
```

Baltimore, Maryland
July 23, 2003
5:22 PM to 5:47 PM

The above-entitled matter came on for a hearing before
The Honorable Andre M. Davis

A P P E A R A N C E S

On Behalf of the Plaintiff:
Paul V. Bennett, Esquire
James Zuna, Esquire

On Behalf of the Defendant:
Robert Ross Niccolini, Esquire

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 2

1              PROCEEDING OF JULY 23, 2003
2        THE COURT:  We are on the record in Mazzarello v.
3 Lucent Technologies, Inc., Case Number AMD 02-3576.
4        Your appearances, please, for the record.
5        MR. BENNETT:  Good afternoon, Your Honor.    Paul
6 Bennett on behalf of the plaintiff, and with me is Mr. James
7 Zuna.  And the plaintiff is with us as well.
8        THE COURT:  Good afternoon.  Thank you.
9        MR. ZUNA:  Good evening, Your Honor.
10        MR. NICCOLINI:  Good afternoon, Your Honor.    Rob
11 Niccolini with McGuire Woods for the defendant, Lucent
12 Technologies.
13        THE COURT:  Good afternoon.  I understand you have an
14 important engagement.
15        MR. NICCOLINI:  Yes, Your Honor.  And I greatly
16 apologize for that.
17        THE COURT:  No problem.  I appreciate your
18 understanding and inconvenience.
19        Well, my approach to this case is not, frankly,
20 terribly different from -- well, that's not true.  I perceive
21 the difficulties in the plaintiff's presentation here in a
22 manner not unlike the difficulties I saw in the last case, for
23 those of you who happened to be in the courtroom.  So, I'm
24 going to start with the plaintiff, even though it's obviously
25 the defendant's motion.

Sharon Cook, Official Court Reporter, U.S. District Court

---

1 Mr. Bennett, are you going to address the issues?
2        MR. BENNETT:  Yes, Your Honor.
3        THE COURT:  Okay.  Limitations obviously is what jumps
4 out here.  I don't understand how you survive a limitations
5 defense here.
6        MR. BENNETT:  Okay.  The limitations issue deals with
7 the date that the EEO complaint was filed.
8        THE COURT:  Right.
9        MR. BENNETT:  And that, I believe, was May the 24th of
10 2002.
11        THE COURT:  Right.
12        MR. BENNETT:  Which means we go back to July the 24th
13 of 2001, which would be the 300 days.
14        The facts demonstrated that there was a proposed
15 transfer of Ms. Mazzarello to a position which she had already
16 previously been advised was a position that was about to be
17 eliminated or was on the cutting edge or cutting board for a
18 reduction in force measure.  This was a position that she had
19 no background in, was not something that she wanted, not
20 something that she was desiring to go to, but she was told
21 during the week of July 24th --
22        THE COURT:  How does it become either an adverse
23 employment action for purposes of a discrete act discrimination
24 claim or an act of harassment sufficient under Morgan to take
25 you back to pre-July 24, 2001?

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 4

1        MR. BENNETT:  Well, I think if an employer tells you
2 you're about to be put in a position where you've already
3 previously been advised that that position is on the cutting
4 board to be eliminated, that pretty well tells you your job's
5 about to be eliminated and that they're setting you up to make
6 it look like it's just a reduction in force measure.
7        And I think it's important to note that Ms. Mazzarello
8 was not trained or qualified for the kind of position that they
9 were trying to transfer her to.  And I think it's significant
10 that that was told to her, that she was going to be transferred
11 to the position.
12        It occurred the week of July 24th through July 30th,
13 so that gets us into, admittedly barely, but it gets us into
14 that 300-day window.
15        THE COURT:  And that's really what this case comes
16 down to on limitations, isn't it?
17        MR. BENNETT:  I think so.
18        (Pause in the proceeding.)
19        MR. BENNETT:  I'll be happy to keep talking if you
20 want.  I mean, I'm kind of waiting for you to -- if you have a
21 question, you can ask me, but we've already set out in the
22 pleadings what the facts are.
23        THE COURT:  I don't know what else you can say.
24 You've said what you have said.
25        Do you have any case, any case from anywhere, any

Sharon Cook, Official Court Reporter, U.S. District Court

1 court, at any time, under any nondiscrimination statute, that

2 remotely comes close to this? Obviously, you don't or you

3 would have cited it to me.

4          MR. BENNETT: There's a lot of cases that we cited.

5          THE COURT: No, no. Cases in which on the 300th day

6 what is relied on to toll limitations is an assertion of an

7 intention to transfer. That's what we have here.

8          MR. BENNETT: She was asked --

9          THE COURT: Drawing all inferences in favor of the

10 plaintiff, as you're entitled to, the --

11          MR. BENNETT: She was transferred, Your Honor.

12          THE COURT: She was not transferred on July 24th.

13          MR. BENNETT: No, not on July 24th.

14          THE COURT: In fact, she was never transferred because

15 she resigned before she was transferred.

16          MR. BENNETT: The transfer I believe took effect

17 officially on July the 30th. That's when she was told that it

18 was to take effect.

19          THE COURT: Where in the record is there evidence that

20 Ms. Mazzarello was transferred? Where is that proof in the

21 record?

22          MR. BENNETT: Oh, gosh. I mean, I don't recall where

23 the testimony is.

24          THE COURT: Well, let's take a minute. Let's take a

25 minute.

Sharon Cook, Official Court Reporter, U.S. District Court

---

1 she immediately resigned.

2          It turns out the investigation only took three days,

3 and the results of the investigation were wholly in her favor.

4 Wholly in her favor. In other words, her decision to resign,

5 with the benefit of 20/20 hindsight, was totally the wrong

6 decision to make. So, she sued on a constructive discharge

7 type claim. Which is what you have here; right?

8          MR. BENNETT: Right.

9          THE COURT: In effect. I mean, I don't think you have

10 called it that, or maybe you have, but you're essentially

11 saying that this resignation was coerced through this

12 conversation about the possibility of a transfer.

13          So, what I concluded in that case is what I think I

14 have to conclude in this case, in slightly different context.

15 That is, that the employee's decision to take preemptive action

16 to protect herself is understandable, but it's not cognizable

17 as a constructive discharge.

18          And, frankly, I have to tell you the facts in this

19 case don't even come close to the facts in the case that I'm

20 telling you about. I mean, there, it was an age discrimination

21 case. There was age, animus displayed in certain comments, and

22 there was a circumstantial case.

23          Here, within the limitations period, you go back 300

24 days, and, I mean, you absolutely have nothing except this one

25 conversation about the transfer.

Sharon Cook, Official Court Reporter, U.S. District Court

---

1          MR. BENNETT: Bear with me.

2          THE COURT: Sure.

3          (Pause in the proceeding.)

4          THE COURT: Mr. Bennett, I had a case, and I didn't

5 publish the opinion, about two months ago. It was a federal

6 employee case -- no, it wasn't. I'm sorry. It was a private

7 case, down on the Eastern Shore. The employee made a mistake

8 on the job, an important mistake, and was placed on unpaid

9 leave pending a full investigation, exploration of the

10 circumstances surrounding the mistake that she made.

11          She asked the decision-maker, you know, what -- she

12 believed she was being "set up", to use your term. I mean, it

13 really was, in this respect, a very similar case. She believed

14 she was being set up. And she had circumstantial evidence of

15 animus. This was not a limitations issue, that's not why I'm

16 bringing it up, but I want to make a point here.

17          She was told, look, this investigation is going to

18 take maybe a week, maybe three weeks, and if we find any

19 similar mistakes, you're out of here. Essentially that's what

20 they told her. She was a very accomplished employee, with an

21 excellent record, and so forth. So, she apparently says to the

22 decision-maker, so what do you think I should do? Meaning,

23 should I take the suspension and wait until you do your

24 investigation, or should I be out of here? And the response

25 was, well, you're going to have to decide for yourself. So,

Sharon Cook, Official Court Reporter, U.S. District Court

---

1          MR. BENNETT: Your Honor, I found it in the

2 transcript.

3          THE COURT: Okay. Where is it?

4          MR. BENNETT: It's Exhibit 1.

5          THE COURT: Your Exhibit 1?

6          MR. BENNETT: Our Exhibit 1.

7          THE COURT: Plaintiff's Exhibit 1.

8          MR. BENNETT: Which is the deposition of the

9 plaintiff, Ms. Mazzarello.

10          THE COURT: Right.

11          MR. BENNETT: Page 245.

12          THE COURT: Oh. You're going to cite me to the

13 deposition of the plaintiff?

14          MR. BENNETT: Yes.

15          THE COURT: No. I want to see a document or an

16 admission by the company. But let me look at what you want me

17 to look at. Page 245?

18          MR. BENNETT: Right.

19          THE COURT: What line?

20          MR. BENNETT: Starting at probably about line 3. No.

21 Line 2, where it says, Tom had asked me if I would consider

22 becoming a Technical Consultant.

23          THE COURT: Right.

24          MR. BENNETT: And it says, I went to Pam after that

25 meeting first.

Sharon Cook, Official Court Reporter, U.S. District Court

1        It's earlier in there.  I mean, the time of that
2  conversation was July 21st, I believe, or the 24th.
3        THE COURT:  And Ms. Mazzarello says, at line 8, like
4  the decision was made.
5        MR. BENNETT:  Right.
6        THE COURT:  That's what you're relying on?
7        MR. BENNETT:  Right.  She was told by her second-line
8  supervisor, Pam Worley, that -- she went and told her about the
9  conversation she had had with Tom Moore, her supervisor, that
10  Mr. Moore had said she was going to become a TC, and Ms. Worley
11  said, you're going to become a TC, like the decision was made.
12  That's it, you know, the decision is made.
13        Now, you know, in the context of what had been going
14  on and the previous advisories that she had received from
15  various employees at Lucent about that position, that's where
16  the chopping is going to be.
17        I'm sure that defendants are going to make a lot of
18  argument about the fact that they had a lot of reduction in
19  force measures going on and that it was an ongoing thing.  The
20  facts are that in this particular department, where they were
21  transferring someone who had absolutely no background, was
22  clearly an indication by the company that they were setting her
23  up to be terminated.  And that occurred within that 300 days.
24        So, you know, this is part of an ongoing series of
25  events that culminated in her being told, we're going to set

1  you up for a position that, you know, this is the kind of
2  position that we're getting rid of.  These are the people who
3  are most likely to be terminated.  Your background just isn't
4  there technically, you don't have that kind of training or
5  background or expertise.  It doesn't take a rocket scientist to
6  put two and two together that you're being set up to be
7  terminated.
8        THE COURT:  Okay.  Mr. Niccolini.
9        MR. NICCOLINI:  First of all, Your Honor, in terms of
10  the record, there is nothing, there is absolutely nothing in
11  this record in terms of documentation or in terms of testimony
12  saying that on July 30th or June 30th, 2001, Ms. Mazzarello was
13  transferred to become a TC.  Actually, both Mr. Moore and Ms.
14  Worley in their depositions, which we have in the record,
15  specifically said that it hadn't happened yet.
16        I believe what Mr. Bennett is referring to -- the
17  testimony was that she went to Ms. Worley, who she claims said,
18  oh, that decision has been made.  That doesn't mean she had
19  been transferred yet.  That doesn't even mean that a date had
20  been set for her transfer yet.  And as of her resignation, at
21  the end of August, she had not, in fact, been transferred.
22        So, therefore, Your Honor, we don't even have an
23  actual transfer here.  We have an attempted transfer.  As we
24  cited to the case of Hainey v. St. Mary's County, a 2001
25  District of Maryland case, an attempt to transfer does not even

1  constitute an adverse action.
2        In addition, Your Honor, I would also submit to this
3  Court that there's undisputed evidence in the record there was
4  massive downsizing going on at Lucent.  There was downsizing in
5  February of 2001, downsizing in March of 2001, and downsizing
6  in August of 2001.  Ms. Mazzarello could have been let go in
7  any of those downsizings, and, by her own admittance, she was
8  not.  I would submit, Your Honor, that if we were trying to set
9  her up for termination, we did an absolutely lousy job of it.
10        In addition, Your Honor, there's also evidence by the
11  plaintiff, herself, in the record, which I cite to, where she
12  admitted during her deposition that, what Mr. Moore told me was
13  that if I wanted to become a sales executive, more technical
14  experience would be helpful.  Mr. Moore had conversations with
15  her, Your Honor, telling her, we have this need in the TC
16  position, we have had people we have let go, and, if you want
17  to advance, getting this technical experience might be a good
18  thing.
19        This, Your Honor, simply does not rise to the level of
20  a constructive discharge.  In my opinion, it doesn't even rise
21  to the level of an adverse action.  And as you, yourself, have
22  noted, Your Honor, in the Chika v. PRC case and in the Settle
23  case, not everything that occurs to an employee rises to a
24  cognizable adverse action.
25        Finally, Your Honor, and I think you hit the nail on

1  the head to begin with, this case, in my opinion, after the
2  Supreme Court's decision in Morgan is not a hard case.  They
3  admit the only thing they've got within the statutory period is
4  this purported attempt to transfer.  I don't see how this is
5  part of a continuing pattern of harassment, Your Honor, to
6  begin with.
7        THE COURT:  Does limitation bar all of plaintiff's
8  claims?
9        MR. NICCOLINI:  No.  As to sexual harassment, Your
10  Honor.
11        THE COURT:  And why is that?
12        MR. NICCOLINI:  Excuse me?
13        THE COURT:  What adverse action occurred within 300
14  days?
15        MR. NICCOLINI:  Your Honor, I hate to admit this on
16  the record, but you're absolutely right.  We argued about
17  limitations in terms of harassment in our motion, Your Honor.
18        THE COURT:  Right.
19        MR. NICCOLINI:  And we should have argued limitations
20  across the board.  I think you're absolutely right.  From a
21  purely limitations standpoint, Your Honor, all the claims are
22  barred.
23        THE COURT:  That's what I thought, but you didn't
24  brief it that way.
25        MR. NICCOLINI:  As I said, and I just now admitted it

1 on the record, Your Honor, I missed the issue.  And to be
2 frank, Your Honor, part of the reason I missed the issue was I
3 thought it was so clear on harassment, and I thought the
4 constructive discharge arguments were so clear on retaliation
5 and discrimination, I just got too excited and, you know,
6 rushed right to those arguments.  But I think Your Honor is
7 absolutely right.  From a limitations standpoint alone, the
8 whole case is barred.
9         THE COURT:  Okay.  Thank you.
10         MR. NICCOLINI:  Thank you, Your Honor.
11         THE COURT:  Mr. Bennett.  Final word?
12         MR. BENNETT:  Well, I think it's a question of fact in
13 terms of whether or not there was an intention to have her be
14 terminated by setting her up and putting her in this position,
15 and whether it was reasonable for her to conclude based on what
16 had happened, all the things that had led up to this, and to be
17 told, we're going to put you in the position where we know
18 there are more cuts coming, and we're going to make you, in
19 effect, the least qualified person in that job.
20         That happened in that 300-day limit, which is the
21 issue that you have brought up at this point.  So, that's why
22 we would argue that because it is part of an ongoing continuing
23 pattern of harassment and mistreatment of Ms. Mazzarello, this
24 culminated in a shot across the bow that she was about to be
25 terminated.

1         I think under the Morgan decision, we're okay on that
2 because that is a discrete act.  And I think all the cases that
3 defense counsel have cited are all fact specific.  They all say
4 that it depends on the facts of the particular case.  The
5 circumstances of this particular situation demonstrated that
6 because they were putting her in the position that they had
7 told her they were going to be putting her in.  And whether
8 ultimately it had been a final decision or not, I would submit
9 is a question of fact.  And from the tone that she was told,
10 you're going to be in this job, this is it, from the tone of
11 that, it was reasonable for her to infer that she didn't have
12 any real choice in this matter.  I think we are okay in terms
13 of the statute of limitations issue at that point.
14         THE COURT:  All right.  Thank you, counsel.
15         I have no hesitation in concluding on this record that
16 limitations bars all of plaintiff's claims.  Treating the July
17 24th, 2001 encounter with Mr. Moore as a discrete act, it's not
18 an adverse employment action.  It's not even clear that an
19 actual transfer on that day would have been an adverse
20 employment action, because there is no suggestion anywhere in
21 the record that plaintiff would have suffered any diminution in
22 salary or benefits or responsibilities.  Indeed, I think part
23 of what plaintiff complains about is that she was going to have
24 increased responsibilities for which she didn't feel she was
25 qualified.  So, as a disparate treatment claim leading to a

1 constructive discharge, it's not an adverse employment action.
2 Nor was it a constructive discharge.
3         As counsel are fully aware, in the Fourth Circuit and
4 elsewhere, the requirements of a constructive discharge are
5 fairly stringent, requiring a showing that no reasonable person
6 could reasonably be expected to remain on the job.  And while
7 certainly under different circumstances I can easily imagine
8 that an employer who transparently "sets up" an employee for
9 discharge by, for example, transferring that employee into a
10 department or division where it's known company-wide or
11 plant-wide that a reduction in force is about to take place,
12 that would be, frankly, an easy case.
13         But I think if the employee takes steps to protect
14 himself or herself, as Ms. Mazzarello did here, then I think
15 basically you don't have a cause of action.
16         I mean, it's like you're out with a friend, and the
17 friend is drinking, and when it's time to go home, the question
18 is, well, do I get in the car with him or her or not?
19         If you don't get in the car, and, therefore, you don't
20 put yourself at risk of an accident that he or she later has,
21 you don't sue for what could have happened.
22         I think a similar principle applies here.  An employer
23 who makes threats, who makes promises, who makes noises like
24 adverse action is about to take place, well, that's why we have
25 the constructive discharge principle.

1         So, it's not an adverse employment action.
2 Threatening to transfer a person that could later lead to that
3 person being laid off is not an adverse employment action.
4 It's not a constructive discharge when such an employee elects
5 to go elsewhere.
6         And, of course, in this record there is substantial
7 evidence that Ms. Mazzarello didn't just leave because she
8 didn't like it at Lucent.  She actually got a better
9 opportunity.  But I don't rely on that.
10         As a sexual harassment case, Morgan obviously is
11 controlling, as it is with respect to a discrete act case.
12 Morgan made clear what most of the Circuits had already made
13 clear.  That is, that if an act of a type and of a sort and of
14 a tone within the 300 days, and in Maryland we're a 300-day
15 state because of the deferral, -- you know, frankly, I don't
16 think Morgan has actually answered this question.
17         Does it have to be an act that is in and of itself
18 harassing?
19         I don't think it goes that far.  I don't think it has
20 to be an act that is in and of itself inherently harassing such
21 that you could bring a cause of action on that act alone.  I
22 think there are single act causes of action for hostile
23 environment.  But it's got to be of a character like unto those
24 events that are outside the period of limitations, outside the
25 300 days.  This is not at all like that.

Page 17

1        Ms. Mazzarello, as I understand it, during that period
2 back in 1999, was just awfully victimized.  Awfully victimized.
3 I don't particularly fault the plaintiff for spending the kind
4 of time it spent in her memorandum, which is like 20 pages.  I
5 mean, I got all the terrible facts of this case.  And they are
6 terrible.  Mr. Herr should be ashamed of himself.  I mean,
7 Lucent, frankly, didn't do enough, as far as I'm concerned.
8        But all of that happened years ago.  Lucent did take
9 steps, reasonable steps to bring the matter to a halt.  And
10 plaintiff, for whatever reason, and I'm not going to speculate,
11 didn't file a complaint then and didn't file a complaint until
12 a year after she left her employment.  So, as a sexual
13 harassment claim, limitations bars the claim.
14        The encounter of July 24, 2001 as a matter of law is
15 not of a character such that a reasonable person would perceive
16 it as harassment.  The plaintiff's attempt to reach back
17 outside the 300-day period on the basis of the July 24, 2001
18 encounter fails as a matter of law.
19        So, all of plaintiff's claims, retaliation, discrete
20 act, as well as sexual harassment, are barred by limitations
21 because plaintiff failed to file and exhaust her administrative
22 remedy with the Equal Employment Opportunity Commission in a
23 timely fashion.  Congress and the EEOC, through its deferral
24 agreements, have created these 300-day limitations periods.  Of
25 course, in some states it's still 180 days.  You can argue

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 18

1 about whether that's long enough.  We've got typical three-year
2 statute of limitations for tort claims in this state.  But that
3 is Congress' judgment, and it doesn't lie with this Court to
4 question that judgment.
5        So, the claim is clearly barred.  The limitations is
6 timely invoked.  Judgment will be entered in favor of the
7 defendant against the plaintiff for failure to exhaust
8 administrative remedies in a timely fashion.
9        We can go off the record now.
10        (An off-the-record discussion was held, and the
11        proceeding was then concluded.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 19

INDEX
Hearing
July 23, 2003

|  | Page Numbers |
|---|---|
| Commencement of Proceeding | 2 |
| Colloquy | 2 |
| Mr. Bennett | 3 — 10 |
| Mr. Niccolini | 10 — 13 |
| Mr. Bennett | 13 — 14 |
| Ruling by the Court | 14 — 18 |
| Conclusion of Proceeding | 18 |

Sharon Cook, Official Court Reporter, U.S. District Court

---

C E R T I F I C A T I O N

I, Sharon Cook, hereby certify that I was the
Official Court Reporter present during the foregoing proceeding
and that this verbatim transcript is true and accurate.  The
proceeding was taken by me in machine shorthand, and this
verbatim transcript was subsequently prepared by me utilizing
the XSCRIBE Computer-Aided Transcription system.

Sharon Cook
Official Court Reporter
7522 United States Courthouse
101 West Lombard Street
Baltimore, Maryland     21201

Telephone No.:  (410) 837-2343

Sharon Cook, Official Court Reporter, U.S. District Court